2006 WY 142

**Richard B. OSBORN, Appellant (Plaintiff),**

v.

**Russell KILTS, Appellee (Defendant).**

**No. 06–9.**

Supreme Court of Wyoming.

Nov. 6, 2006.

merit in this appeal, we affirm and award costs to Kilts.

## ISSUES

[¶ 2]  Osborn presents eleven issues on appeal [1]; however, these issues can be narrowed to the following questions:

1.  Whether Osborn's claims of road ownership are barred by the doctrine of *res judicata?*

2.  Whether the district court's findings were clearly erroneous?

Further, Kilts asks us to determine whether sanctions should be imposed against Osborn.

## FACTS

[¶ 3]  In 2000, Kilts purchased a parcel of land from the Manning family that is adjacent to land owned by Osborn.  Osborn's history with the Manning family and others over his rights concerning these parcels is well known to this Court.[2]  When Kilts purchased his property, conflicts soon arose over the use of an access easement [3] held by Osborn.

[¶ 4]  On June 27, 2002, Osborn filed a complaint which alleged that Kilts had impermissibly interfered with Osborn's exclusive use of the access road and had damaged the road.  The district court granted summary judgment in favor of Kilts to the extent that Osborn's claims were based on the assertion that he owned the road and therefore had the right to exclude Kilts from the use thereof.  The district court relied on the

Representing Appellant:  Richard B. Osborn, Pro Se.

Representing Appellee:  Rick L. Koehmstedt of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]  Richard B. Osborn appeals a decision of the district court ordering him to remove "all junk and debris" placed by him along an access easement he holds over the land of Russell Kilts.  Osborn claims that he owns the access road and can properly exclude Kilts, and also that he has the right to maintain his road as he sees fit.  Finding no

1.  In his statement of the issues, Osborn fails clearly to identify any issues, instead merely presenting a single-page synopsis of factual assertions.  Indeed, his eleven issues are only identified in his statement of the facts.  We have often repeated that the failure to comply with our appellate rules, including rules regarding the content of appellate briefs, "is ground ... for such action as the appellate court deems appropriate, including but not limited to: refusal to consider the offending party's contentions; assessment of costs; dismissal; and affirmance." W.R.A.P. 1.03.  However, to avoid a similar appeal on these issues in the future, we will attempt to address the issues raised in Osborn's brief in this instance.

2.  *See Osborn v. Manning,* 685 P.2d 1121 (Wyo. 1984); *Osborn v. Warner,* 694 P.2d 730 (Wyo.

1985); *Osborn v. Pine Mountain Ranch,* 766 P.2d 1165 (Wyo.1989); *Osborn v. Manning,* 798 P.2d 1208 (Wyo.1990); *Osborn v. Manning,* 812 P.2d 545 (Wyo.1991); *Osborn v. Manning,* 812 P.2d 549 (Wyo.1991); *Osborn v. Manning,* 817 P.2d 889 (Wyo.1991); *Osborn v. Painter,* 909 P.2d 960 (Wyo.1996); and *Osborn v. Estate of Manning,* 968 P.2d 932 (Wyo.1998).  Osborn was also the appellant in *Osborn v. Emporium Videos,* 848 P.2d 237 (Wyo.1993) and *Osborn v. Emporium Videos,* 870 P.2d 382 (Wyo.1994).

3.  As will be explained more fully herein, Osborn claims that he owns the road across Kilts' land and it is not an easement; however, the road has long been deemed, through judicial proceedings, an easement for the benefit of Osborn.

doctrine of *res judicata* in granting summary judgment to Kilts, particularly because Osborn's claim that he owned the road had previously been litigated, decided adversely to Osborn, and affirmed on appeal. *See Osborn v. Painter*, 909 P.2d 960, 961–62 (Wyo. 1996).

[¶ 5] A bench trial was later held on Osborn's claims that Kilts had interfered with the roadway and on counterclaims filed by Kilts alleging that Osborn barricaded the roadway, restricting Kilts' use, and that Osborn illegally destroyed a cattle guard erected by Kilts. After Osborn presented his case, the district court granted Kilts' motion for a directed verdict. The court determined that (1) there was no evidence that Osborn's use of the easement had been impeded; (2) any claimed interference with the easement was temporary and *de minimus;* (3) there was no evidence that Kilts had personally obstructed the easement; and (4) there was no proof offered regarding damages. Kilts then presented evidence for his counterclaims and the district court ruled that Osborn had impermissibly interfered with Kilts' use of the roadway and had wrongfully destroyed the cattle guard. Osborn now appeals.

## STANDARD OF REVIEW

[¶ 6] The application of the doctrine of *res judicata* is a question of law that we review *de novo*. *In re Big Horn River System*, 2004 WY 21, ¶ 19, 85 P.3d 981, 987 (Wyo.2004). We review a district court's findings of fact to determine whether they are clearly erroneous. *Baker v. Pike*, 2002 WY 34, ¶ 9, 41 P.3d 537, 541 (Wyo.2002).

## DISCUSSION

[¶ 7] While Osborn's individual issues are often difficult to discern, the majority of his brief is devoted to arguments regarding the legal status of his access road. Osborn claims that he owns the road, has the right to sole possession, and may prevent Kilts from using the road. Kilt responds that (1) Osborn is merely the dominant estate owner to an access easement; (2) Osborn's ownership claim has been previously litigated and determined against Osborn;

and, therefore, (3) the doctrine of *res judicata* required the district court to reject Osborn's argument. We agree that the district court properly applied that doctrine and granted Kilts summary judgment on this issue.

[¶ 8] In February 1989, a Natrona County court determined that the

> roadway is an easement, that the Defendant [Osborn] is the owner of the dominant estate, that the Plaintiff [Manning, Kilts' predecessor in interest] is the owner of the servient estate, that the roadway serves a two fold purpose, i.e., as the Defendant's means of access to the Defendant's property and as the Plaintiff's means of access to the Plaintiff's property and buildings. . . .

Both the district court and this Court affirmed that court's decision. *See Osborn v. Painter*, 909 P.2d 960.

[¶ 9] Osborn is no stranger to the application of *res judicata*. In *Osborn v. Painter*, 909 P.2d at 964, we said:

> We then are confronted almost purely with the effect of the doctrine of *res judicata*. In the case of *Osborn v. Manning*, 798 P.2d 1208, 1210 (Wyo.1990), we summarized the doctrine of *res judicata:*
>
> > The doctrines of *res judicata* and collateral estoppel
> >
> > > "incorporate a universal precept of common-law jurisprudence to the effect that 'a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.'"
> >
> > *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 336 (Wyo. 1986) (quoting *Delgue v. Curutchet*, 677 P.2d 208, 213 (Wyo.1984)). *Res judicata* "constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." *Barrett v. Town of Guernsey*, 652 P.2d 395, 398 (Wyo.1982), *quoted in Swasso v. State ex rel. Wyoming Worker's Compensation Division*, 751 P.2d 887, 890 (Wyo.1988).

*See Rialto Theatre, Inc.*, 714 P.2d 328 (defining a cause of action).

The criteria used to determine res judicata's applicability to a situation are: "(1) the parties were identical; (2) the subject matter was identical; (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them."

*Newell v. Trumper*, 765 P.2d 1353, 1355 (Wyo.1988) (quoting *Swasso*, 751 P.2d at 890).

■ [¶ 10] The "identical parties" requirement in a *res judicata* analysis is met when either the parties are actually the same parties to the previous proceedings, or they are in privity[4] with those parties. *See Rialto Theatre v. Commonwealth Theatres*, 714 P.2d 328, 336 (Wyo.1986). Because Kilts was the successor in interest to Manning, the parties in the instant case are identical to the parties in the 1989 litigation.[5] It is equally clear that the last three elements of a claim of *res judicata* were met because the issue, the subject matter, and the capacity of the parties to argue the subject matter and issue are identical to the previous lawsuit, and Osborn presents no cogent argument claiming otherwise.[6] Therefore, summary judgment was properly granted on Osborn's road ownership claim.

■ [¶ 11] Likewise, Osborn raised a second issue that has previously been decided adversely to him. Prior to trial, Osborn destroyed a section of a fence erected to prevent Kilts' cattle from traveling past a cattle guard and intermingling with other "breeding groups." Osborn now argues that the district court erred when it determined that Kilts may replace that fence. More specifically, he claims that because "the fence was a hazard to this appellant, he did not have to wait for several years for a court to order it removed." The district court determined that the fence, which was placed beside the road at the bottom of an embankment, "in no way obstructs Mr. Osborn's use of the easement for ingress and egress," and may be replaced as long as it does not impede the free flow of water.

[¶ 12] In *Osborn v. Manning*, 812 P.2d 545 (Wyo.1991), we affirmed an order of the district court in which this issue had been previously decided adversely to Osborn. In that case, the district court determined that Manning, Kilts' predecessor, could build a gate near the cattle guard, but was "enjoined from constructing or causing to be constructed any posts near the cattle guard ... that have the effect of impeding the free flow of surface water." *Id.* at 547. In the instant case, Osborn raised the same issue—whether a gate may be constructed near the cattle guard—and the district court's order conformed to the previous order—a gate may be constructed, but it cannot impede the free-flow of surface water. We, therefore, affirm the determination of the district court on this issue.

■ [¶ 13] Osborn next argues that it is his right to maintain the road as he sees fit, regardless of whether he owns the road or merely has an easement. Therefore, according to Osborn, it was error for the district court to require Osborn to remove refrigerators filled with dirt, half-buried tires, and barbed wire from the roadside, which items were ostensibly meant to maintain and divert water from the road.

[¶ 14] Osborn's argument on appeal ignores the basis for the district court's decision and, therefore, must fail. The district

---

4. Privity means a "connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property)...." *Black's Law Dictionary* 1237 (8th ed.2004).

5. We also note that Painter, the named appellee in the previous case, was Manning's attorney and Manning was also an appellee in that case. *Osborn v. Painter*, 909 P.2d at 961.

6. The 1989 litigation involved the additional question of whether Osborn interfered with Manning's use of the servient estate by digging a ditch along the easement, but the threshold question of whether Osborn owned the road or had an easement was still necessarily decided. *See Osborn v. Painter*, 909 P.2d at 963.

court determined that the "debris, barriers, posts, wires, refrigerators, and the like ... creates an unreasonable health risk to all persons using the property, is unsightly, is not shown to serve any useful purpose, and is not reasonably related to use of the dominant estate for ingress and egress by Richard Osborn." Osborn's argument consists only of his insistence that he may maintain the easement, but fails to address the district court's finding of fact that his "maintenance" was unhealthy, unsightly, and ineffectual. Because of this lack of cogent argument, we will affirm the district court's decision on this issue.

[¶ 15] The final two issues we can discern from Osborn's brief are that the attorney for Kilts committed a fraud on the court and that the district court judge should have been disqualified from presiding over this case. We will summarily affirm those issues because they are not supported by cogent argument or citation to pertinent authority. *Cathcart v. Meyer*, 2004 WY 49, ¶ 20, 88 P.3d 1050, 1060 (Wyo.2004). Insofar as Osborn's brief contains various other complaints regarding the district court's order or Kilts' actions in general, the findings of fact, conclusions of law, and judgment are affirmed in all respects for the same reason.

[¶ 16] We must finally determine whether sanctions are appropriate. According to W.R.A.P. 10.05, we may award attorney's fees and damages if "there was no reasonable cause for the appeal." We have said that "we will award sanctions in those rare circumstances where an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record." *Welch v. Welch*, 2003 WY 168, ¶ 13, 81 P.3d 937, 940 (Wyo.2003). Further, *pro se* litigants are not excused from following our rules of procedure, as Osborn well knows. *Id.; see also Osborn v. Warner*, 694 P.2d 730 (Wyo.1985); *Osborn v. Pine Mountain Ranch*, 766 P.2d 1165 (Wyo.1989); *Osborn v. Painter*, 909 P.2d 960; and *Osborn v. Estate of Manning*, 968 P.2d 932 (Wyo.1998). In the instant case, sanctions are justified. Osborn's substantive arguments on appeal are difficult to identify and, when identifiable, are frivolous; the arguments lack cogence and, often, coherence; his citations to the record for factual assertions largely reference his previous filings which are not factual evidence in the record; Osborn ignores the reasons for the district court's decisions and often seemingly argues that we should reverse the district court simply because he does not agree with the outcome; and any citations to legal authority are very general and are not pertinent to the facts and circumstances of this case. Accordingly, Kilts' counsel shall submit a statement of costs and attorney's fees incurred in this appeal. Upon review, we will enter an order awarding the appropriate costs and fees to Kilts.

[¶ 17] Affirmed.