2010 WY 21

**WYOMING MEDICAL CENTER, INC., a Wyoming corporation, Appellant (Defendant),**

v.

**WYOMING INSURANCE GUARANTY ASSOCIATION, a Wyoming non-profit unincorporated legal entity, Appellee (Plaintiff).**

No. S–09–0109.

Supreme Court of Wyoming.

Feb. 26, 2010.

Representing Appellant: Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Representing Appellee: James R. Bell of Murane & Bostwick, LLC, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] After the Wyoming Medical Center's (WMC) insurer became insolvent, the Wyoming Insurance Guaranty Association (WIGA) paid claims made against WMC. WIGA then filed a complaint against WMC claiming that it was obligated to pay the deductibles for each claim. Asserting that WIGA stood in the shoes of the insurer, WMC argued that WIGA's claim was barred by an earlier district court ruling that WMC was not obligated to pay the deductibles to its insolvent insurer. WIGA filed a summary judgment motion which the district court granted, ruling that WMC was obligated to pay the deductibles. WMC appealed. We affirm.

## ISSUES

[¶2] WMC states the issues for this Court's determination as follows:

1. In light of the trial court's prior ruling "[t]hat [Wyoming Medical Center

("WMC") ] does not have any obligation to pay [Phico Insurance Company ("Phico") ] any deductible on claims settled by the Wyoming Insurance Guaranty Association [ ("WIGA"),]" is WIGA's complaint in the same court to collect those same deductibles from WMC under a canceled professional liability insurance policy on behalf of the liquidated insurer, Phico, barred by the doctrine of res judicata?

2. Is WMC entitled to a setoff for attorneys' fees incurred in the defense of various covered claims?

WIGA contends the district court properly granted summary judgment in its favor and res judicata does not apply.

## FACTS

[¶ 3] PHICO Insurance Company (PHICO) issued a Health Care Providers Liability Policy to WMC effective from July 16, 1999, to July 16, 2000. The parties renewed the policy twice, and it remained in effect until July 16, 2002. The policy provided that PHICO would pay all sums which WMC became legally obligated to pay as damages because of bodily injury or property damage caused by a medical incident occurring and reported during the effective date of the policy. The policy also provided that PHICO's obligation to pay damages under the policy applied only in excess of a deductible amount of $50,000.

[¶ 4] On February 1, 2002, while the policy was still in effect, a Pennsylvania court entered an order of liquidation against PHICO. The order stated that all insurance policies issued by PHICO were cancelled and terminated for all purposes. Prior to the liquidation, PHICO had been providing a defense to WMC on several claims made against it.

[¶ 5] After entry of the liquidation order, WIGA stepped in to pay the covered claims pursuant to the Wyoming Insurance Guaranty Association Act, Wyo. Stat. Ann. § 26–31–101 through 26–31–117 (1991).

> The Act ... is based upon the Post–Assessment Property and Liability Insurance Guaranty Association Model Act ... prepared by the National Association of Insurance Commissioners....

> The Act creates an involuntary nonprofit unincorporated legal entity, [WIGA], whose members are insurers qualified to transact business in Wyoming. Wyo.Stat. § 26–31–104(a) and (b). Each member contributes an assessment, based on a percentage of premiums from insurance policies written in Wyoming, to a fund which is used to pay claims. Wyo.Stat. § 26–31–107(a). When an insurance company is determined to be insolvent, [WIGA] "steps into the shoes of the insolvent insurer." [WIGA] is deemed the insurer to the extent of its obligation for covered claims.... Wyo.Stat. § 26–31–106(a)(ii).

*Wyoming Ins. Guar. Ass'n v. Woods*, 888 P.2d 192, 195 (Wyo.1994) (some citations omitted).

[¶ 6] In the present case, WIGA paid three claims against WMC, the first in June of 2002 for $25,000; the second in July of 2002 for $165,000; and the third in August of 2002 for $150,000. After paying the claims, WIGA demanded payment from WMC of $125,000, the sum of the deductibles for the claims paid in June ($25,000), July ($50,000) and August ($50,000) of 2002. WMC refused the demand, claiming that it had no obligation to pay the deductibles.

[¶ 7] Subsequently, WMC filed a complaint for declaratory judgment against PHICO in Wyoming district court. WMC sought a declaration that PHICO's liquidation was a breach of the insurance contract and, upon the insurer's breach, WMC had no obligation to pay PHICO any deductible on the claims WIGA paid. PHICO failed to appear in the action and WMC moved for entry of default. The clerk of court entered default and ultimately, in 2004, the district court entered a default judgment declaring that PHICO breached the insurance contract and WMC had no obligation to pay PHICO any deductible on claims paid by WIGA.

[¶ 8] WIGA then filed its complaint requesting judgment against WMC for the $125,000 plus interest and costs. WMC answered, denying any obligation to pay the deductibles on the ground that the default judgment, holding it did not have to pay PHICO, applied also to WIGA. WMC also filed a counterclaim against WIGA alleging

that, under § 26–31–106(a)(ii) of the Insurance Guaranty Association Act, WIGA was deemed the insurer upon PHICO's insolvency and was obligated to pay any damages WMC sustained as a result of PHICO's breach of the insurance contract, including $50,000 in settlement costs WMC had paid that PHICO was obligated to pay and $45,000 in legal fees. WMC asked that WIGA's complaint be dismissed and judgment be awarded in its favor on the counterclaim.

[¶ 9] WIGA denied that it was obligated to pay WMC any amounts. WIGA subsequently filed a motion for summary judgment in its favor on both the complaint and the counterclaim.[1] The parties filed briefs and, after a hearing, the district court issued a decision letter in which it concluded WIGA was entitled to judgment against WMC in the amount of $125,000 plus prejudgment interest and WMC was not entitled to a set-off for its payment of $50,000 in settlement of a different claim made against it under the insurance policy. The district court requested additional briefing on the question of whether WMC was entitled to a set-off against the judgment in the amount of fees it had paid directly to attorneys who had defended claims against it.

[¶ 10] The parties subsequently filed cross motions for summary judgment on the attorney fees issue. After considering the parties' briefs and arguments at a hearing, the district court entered an order granting summary judgment for WIGA on that claim as well. WMC appealed both orders.

## STANDARD OF REVIEW

[¶ 11] When reviewing an order granting summary judgment, we consider the record *de novo. Stone v. Devon Energy Prod. Co., L.P.,* 2009 WY 114, ¶ 10, 216 P.3d 489, 492 (Wyo.2009).

[W]e have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did [the district judge]. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.

*McGarvey v. Key Prop. Mgmt. LLC,* 2009 WY 84, ¶ 10, 211 P.3d 503, 506 (Wyo.2009). The question of whether res judicata bars a claim is one of law. *Osborn v. Kilts,* 2006 WY 142, ¶ 6, 145 P.3d 1264, 1266 (Wyo.2006). Statutory construction is also a question of law, which we review *de novo. Luhm v. Bd. of Trustees of Hot Springs Co. Sch. Dist. No. 1,* 2009 WY 63, ¶ 8, 206 P.3d 1290, 1294 (Wyo.2009).

## DISCUSSION

[¶ 12] WMC argues, as it did in the district court, that res judicata barred WIGA's claim for payment of the deductibles. WMC contends the earlier default judgment against PHICO established that it had no obligation to pay PHICO any deductibles on claims settled by WIGA. WMC asserts WIGA stands in the shoes of PHICO, has no more right to payment of the deductibles than PHICO did and its claim is precluded by the earlier ruling.

[¶ 13] WIGA responds that the doctrine of res judicata does not bar its claim because the doctrine only applies when the parties in the earlier action are identical to those in the

---

1. In its summary judgment motion, in addition to arguing that res judicata did not apply, WIGA argued alternatively that the default judgment entered in Wyoming against PHICO was void because the liquidation order from the Pennsylvania court and Pennsylvania law provided that no action at law or equity could be brought against PHICO in Pennsylvania or elsewhere except as a claim in a liquidation proceeding.

WMC responded that this Court rejected a similar argument in *Hoiness–La Bar Ins. v. Julien Constr. Co.,* 743 P.2d 1262 (Wyo.1987) and, in any event, the Pennsylvania order addressed only monetary claims, it did not bar declaratory judgment actions. Neither party raises the issue on appeal and we confine our discussion to the issues raised.

later action. Because the default judgment was entered in a case between PHICO and WMC, and WIGA was not a party to that action, WIGA contends res judicata does not apply. WIGA further asserts that it does not stand in the shoes of PHICO so as to be considered one and the same for purposes of its right to payment of the deductibles.

[¶ 14]  In its ruling on this issue, the district court stated:

> The criteria used to determine res judicata's applicability to a situation are: "(1) the parties were identical;  (2) the subject matter was identical;  (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them." [*Osborn v. Kilts*, 2006 WY 142, ¶ 8, 145 P.3d 1264, 1266–1267 (Wyo.2006).] At a minimum, the first and the fourth criteria are not present in this case. The parties in this case are not identical, since WIGA is not PHICO for all purposes, nor were the capacities identical. WMC, in the first action, was attempting, reasonably it seems, to avoid having to pay deductibles to an insolvent insurer that had not provided a defense or even had to pay the settlement claim. WIGA, on the other hand, is carrying out its statutory obligation to protect and conserve the funds allocated to it.
>
> Finally, there is considerable logic to support the Default Judgment between WMC and PHICO. It clearly makes sense to protect WMC and save it from having to pay deductibles to an insolvent insurer that failed to meet its obligations under the insurance contract. It makes no sense, however, to interpret the Default Judgment as protecting WMC as against WIGA, which ended up paying the claim settlement amounts. If WMC were to prevail on this argument, it would be in a substantially better position than it would have if PHICO had not become insolvent. The Default Judgment does not preclude WIGA from collecting from WMC, it only prevents PHICO from collection attempts.

[¶ 15]  We begin our review of the district court's ruling by considering the law governing the doctrine of res judicata, which bars re-litigation of previously litigated causes of action or claims.  *CJ v. SA*, 2006 WY 49, ¶ 11, 132 P.3d 196, 202 (Wyo.2006). As the district court stated, four factors must exist for res judicata to apply: 1) the parties must be identical; 2) the subject matter must be identical; 3) the issues must be identical and relate to the same subject matter; and 4) the capacities of the persons must be identical in reference to both the subject matter and the issues between them.  *Id.* The party asserting that res judicata applies must analyze the elements of the relevant doctrine by comparing the earlier proceeding and the present one.  *Id.*

[¶ 16]  WMC acknowledges that PHICO was a party in the earlier proceeding and WIGA was not, and WIGA, not PHICO, is a party in the present action. WMC contends, however, the requirement that the parties be identical is satisfied because PHICO and WIGA are in privity with one another; that is, they have a close, significant connection and share a direct financial or proprietary interest.  *Osborn*, ¶ 10, 145 P.3d at 1267.  For purposes of applying res judicata, WMC asserts, the parties need not be identical but may be in privity with each other.

[¶ 17]  As the basis for its assertion that WIGA and PHICO are in privity with each other, WMC cites the following provisions of the Insurance Guaranty Association Act:

— § 26–31–106(a)(ii), which states that WIGA shall "be deemed the insurer to the extent of its obligation of the covered claims and to that extent has all rights, duties and obligations of the insolvent insurer as if the insurer were not insolvent;"

— § 26–31–110(a), providing that WIGA "has no cause of action against the insolvent insurer's insured for any sums it has paid out except the causes of action as the insolvent insurer would have had if it had paid those sums;"

— § 26–31–108(d)(i)(D), stating that "notice of claims to the receiver or liquidator of the insolvent insurer shall be deemed notice to the association...."

[¶ 18] In addition to the statutory provisions, WMC cites this Court's statement in *Wyoming Ins. Guar. Ass'n v. Allstate Indemnity Co.,* 844 P.2d 464 (Wyo.1992) that WIGA steps into the shoes of an insolvent insurance company by assuming its obligations. WMC also contends WIGA and PHICO acted as if they stood in each other's shoes. WMC asserts that WIGA authorized PHICO to demand payment from WMC of the deductible amounts on WIGA's behalf; thus, by WIGA's own admission, it stands in the shoes of PHICO.

[¶ 19] We consider first the provisions of the Insurance Guaranty Association Act, keeping in mind that our review is governed by the following standards:

The paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

We have recognized that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity but is not conclusive. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

*Kennedy Oil v. Dep't of Revenue,* 2008 WY 154, ¶ 10, 205 P.3d 999, 1003 (Wyo.2008) (citations omitted).

[¶ 20] In construing specifically the Insurance Guaranty Association Act, we previously have said:

The purpose of the Act is to provide a mechanism for the payment of covered claims which avoids excessive delay in payment and avoids financial loss to claimants or insureds because of the insolvency of an insurer. The Act seeks to remedy the social consequences resulting from the insolvency of an insurer.... Therefore, as remedial legislation designed for the public's protection, this court must liberally construe the Act to achieve its purposes and strictly construe all exceptions to indemnification.

*Woods,* 888 P.2d at 195 (citations omitted).

[¶ 21] Section 26–31–106 sets out WIGA's duties and powers in relevant part as follows:

(a) Except as provided in subsection (c) of this section, [WIGA] shall:

(i) Be obligated to *pay covered claims:*

. . . .

(ii) *Be deemed the insurer to the extent of its obligation of the covered claims* and to that extent has all rights, duties and obligations of the insolvent insurer as if the insurer were not insolvent;

. . . .

(c) Notwithstanding subsection (a) of this section, the association:

. . . .

(iv) Is not obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy or coverage from which the claim arises.

[¶ 22] Section 26–31–103(a)(ii) defines a "covered claim" for purposes of the Act as follows:

(ii) *"Covered claim" means an unpaid claim* which arises out of and is *within the coverage* and does not exceed the applicable limits *of an insurance policy* to which this chapter applies issued by an insurer, if the insurer is an insolvent insurer and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state, *but "covered claim" does not include:*

(A) *Any amount due any* reinsurer, *insurer,* insurance pool or underwriting association as subrogation recoveries or otherwise;

. . . .

(D) *Supplementary payment obligation including* but not limited to adjustment fees and expenses, *attorney fees* and ex-

penses, court costs, interest and bond premiums.

(Emphasis added).

[¶ 23] Pursuant to the plain language of § 26–31–106(a)(i), WIGA is obligated to pay "covered claims." "Covered claims" are those claims the insurer would have been obligated to pay but for its insolvency. Section 26–31–103(a)(ii). The term "covered claims" does not include "any amount due any insurer" nor does it include supplementary payment obligations, such as attorney fees. Section 26–31–103(a)(ii)(A) and (D). Giving this language its plain and ordinary meaning, it appears the legislature intended WIGA to pay only what an insurer would have paid had it remained solvent.

[¶ 24] The legislature's intent that WIGA be obligated to pay only what a solvent insurer would have been obligated to pay is further reflected in the plain language of § 26–31–106(a)(ii), stating that WIGA is "deemed the insurer *to the extent* of [the insurer's] obligation of the covered claims and *to that extent* has all rights, duties and obligations of the insolvent insurer *as if the insurer were not insolvent.*" Similarly, § 26–31–106(c)(iv) states that WIGA is not obligated to pay more than the insolvent insurer would have been obligated to pay. A solvent insurer would have been obligated to pay the claim amount less the deductible.

[¶ 25] Section 26–31–110 provides in relevant part as follows:

> (a) Any person recovering under this chapter assigns his rights under the policy to the association to the extent of his recovery from the association. Any insured or claimant seeking the protection of this chapter shall cooperate with the association to the same extent as that person would have been required to cooperate with the insolvent insured. The association has no cause of action against the insolvent insurer's insured for any sums it has paid out except the causes of action as the insolvent insurer would have had it if had paid those sums.

Giving this language its plain and ordinary meaning, WIGA has no cause of action against an insured for any sums it has paid out except those the insurer would have had if it had been solvent.

[¶ 26] The plain and ordinary meaning of the statutory language clearly reflects that the legislature intended WIGA to be obligated to pay the claims against WMC to the same extent PHICO would have been had it not become insolvent. Had PHICO remained solvent, it would have been obligated to pay the claims less the deductibles. Pursuant to the terms of the insurance contract, WMC was required to pay the deductibles. Had WMC refused to pay the deductibles, it would have been in breach of the insurance contract and a solvent PHICO could have sought recovery from WMC of the deductible amounts. WIGA's rights and duties are no more and no less than PHICO's would have been. Construing the statutory language otherwise would leave WMC in a better position as a result of WIGA's involvement than it would have been if PHICO had not been insolvent, a result we are not convinced the legislature intended.

[¶ 27] The parties have cited no case addressing an insurance guaranty association's right to reimbursement of deductibles it has paid after an insurer's insolvency, and we have found none. However, there is wide support for construing insurance guaranty association statutes, as we have, to mean that the rights and duties of such associations are limited to those explicitly set forth in the statutes. In *T & N PLC v. Pennsylvania Ins. Guar. Ass'n,* 800 F.Supp. 1259, 1263 (E.D.Pa.1992) (citations omitted), for example, the court stated:

> [T]he courts have construed the Insurance Guaranty Act broadly to effect the purposes of the Act and to guarantee the payment of covered claims. Where, however, "the Act explicitly denies a recovery … or bars a cause of action … [it] must be strictly construed." Thus, under the provisions of the Insurance Guaranty Act, it is clear that, contrary to T & N's contention, PIGA does not "stand in the shoes" of an insolvent insurer for all purposes.

Similarly, in *Nebraska Life & Health Ins. Guar. Ass'n. v. Dobias,* 247 Neb. 900, 531 N.W.2d 217, 220 (1995), the Court stated: "[A] guarantor is not the legal successor of

the insolvent insurer. Rather, as a statutory creation, the guarantor is only liable to the extent provided by the statute creating the guarantor."

[¶ 28] Construing its Insurance Guarantee Act, the court in *Saylin v. Cal. Ins. Guar. Ass'n*, 179 Cal.App.3d 256, 224 Cal.Rptr. 493, 497 (1986) (citations omitted) concluded because:

> "covered claims" are not coextensive with an insolvent insurer's obligations under its policies, CIGA cannot and does not "stand in the shoes" of the insolvent insurer for all purposes. Indeed, CIGA is "expressly forbidden" to do so except where the claim at issue is a "covered claim."

Similarly, the court in *Virginia Property & Casualty Ins. Guaranty Ass'n v. International Ins. Co.*, 238 Va. 702, 385 S.E.2d 614, 616 (1989) stated:

> The Act, considered as a whole, clearly indicates that the General Assembly did not intend that the Association merely "step into the shoes" of the insolvent insurer.... [The Association] is not merely a solvent substitute for an insolvent insurance company....
>
> The insolvency of [the insurer] created a legal relationship between [the insured] and the Association which reflected the terms of the [insurance] policy only to the extent they were not otherwise limited by the Act."

[¶ 29] Thus, our conclusion that WIGA does not step into PHICO's shoes except to the extent provided in the Wyoming act, and is entitled to reimbursement of the deductibles just as PHICO would have been had it remained solvent, is consistent with other courts' interpretations of their insurance guaranty association acts. The 2004 default judgment declaring that PHICO breached the insurance contract and WMC was not obligated to pay the deductible amounts to PHICO does not change this result. The default judgment was entered after and as a result of PHICO's insolvency. The judgment declaring that PHICO's insolvency constituted a breach of contract relieving WMC of the duty to pay PHICO has no effect upon WIGA's statutory rights and duties, which are limited expressly to those PHICO would have had *if it were not insolvent*. But for its insolvency, PHICO would have been required to pay the claims against WMC and WMC would have been obligated to pay the deductible amounts.

[¶ 30] The doctrine of res judicata simply does not apply to bar WIGA's claim. WIGA was not a party to WMC's earlier action against PHICO nor does WIGA stand in the shoes of PHICO so that the judgment relieving WMC from paying the deductibles to the insolvent PHICO likewise relieves WMC from paying the deductibles to WIGA. PHICO breached its insurance contract with WMC and upon its breach WMC was relieved of paying PHICO. WIGA did not have or breach any contract with WMC and the default judgment declaring that PHICO breached the contract did not pertain in any way to WIGA.

[¶ 31] Unlike WMC's action against PHICO, WIGA filed its action against WMC pursuant to the Insurance Guaranty Act seeking payment from WMC for amounts WIGA paid on claims against WMC beyond what a solvent PHICO would have been obligated to pay. WIGA and PHICO are not identical and were not in privity so as to make it appropriate to apply the default judgment in the breach of contract action against WIGA to bar its claim under the Insurance Guaranty Act. The subject matter of the earlier action was whether PHICO breached the insurance contract and WMC was relieved from paying PHICO the deductible amounts. The subject matter of the present action was whether WIGA was entitled to recover the deductible amounts from WMC under the Insurance Guaranty Act as PHICO could have done had it remained solvent. PHICO's capacity in the breach of contract action was different from WIGA's capacity in the statutory action and their capacities were different in terms of their entitlement to payment after PHICO's insolvency of the deductible amounts. We affirm the district court's order granting summary judgment to WIGA on its complaint.

[¶ 32] We turn to consideration of WMC's contention that the district court erred in granting summary judgment to

WIGA on its counter-claim for a set-off against the judgment in the amount of attorney fees. After PHICO's insolvency, WMC paid the attorney fees at issue directly to the law firm for services it provided in defending WMC against claims covered under the insurance policy. WMC asserts that but for the insolvency PHICO would have been required to reimburse WMC for attorney fees it paid directly to its attorneys for defending the claims. Likewise, WMC contends, WIGA is obligated for the attorney fees and a set-off against the judgment is an appropriate way to accomplish that.

[¶ 33] The district court found that the attorney fees at issue were incurred prior to PHICO's insolvency. The district court held that they were not "covered claims" under § 26–31–103(a)(ii)(D), which expressly excludes attorney fees. Because WIGA is responsible only for covered claims, which does not include attorney fees, the district court concluded WIGA was not responsible for the attorney fees.

[¶ 34] WMC contends the district court's holding is incorrect because the legislature would not have intended to exclude from "covered claims" the attorney fees the insurer would have been obligated to pay had it remained solvent. Looking at the language of § 26–31–103(a)(ii)(D) excluding "supplementary payment obligation including ... attorney's fees," WMC contends it must mean attorney fees arising out of something besides the insurance contract itself, for example, an attorney fees award in a bad faith action. WMC asserts the words do not mean to exclude from covered claims attorney fees it incurred in the defense of claims covered by the policy.

[¶ 35] WIGA contends the language is clear that attorney fees are excluded from "covered claims." Both parties acknowledge they have found no cases involving language identical to § 26–31–103(a)(ii)(D). However, WIGA cites *Scherer v. Texas Property and Cas. Ins. Guar. Ass'n*, 958 S.W.2d 413 (Tex. Ct.App.1997), in which the court construed the Texas guaranty association statute, which excluded from the definition of covered claims "supplementary payment obligations, including ... attorney's fees ... incurred

prior to the determination that an insurer is [insolvent]." Except for the fact that the Texas provision expressly excludes attorney fees incurred prior to the determination of insolvency, and the Wyoming provision appears to exclude all attorney fees, the provisions are identical.

[¶ 36] In *Scherer*, the insureds asserted that because their policy included a duty to defend them from suit and that duty was not fulfilled, their claim for attorney fees reimbursement was within the policy terms and was not a supplementary payment obligation. Like WMC, the insureds in *Scherer* contended the exclusion related solely to other attorney fees not covered by the policy's "duty to defend" clause. The Texas court concluded the statutory language precluded the insureds' recovery of attorney fees, stating that the Texas guaranty act "shows the legislature capable of drawing stark lines with limited exceptions regarding what types of claims and what amounts are compensable." *Id.* at 414. The court concluded the exclusion applied to all attorney fees incurred before the insurer's insolvency for which it would have been liable. *Id.*

[¶ 37] The Wyoming Insurance Guaranty Association Act reflects that our legislature is also capable of drawing the line between what is covered and what is not. As we have said, it is clear the legislature intended WIGA's rights and duties to be defined by the statutes and not to be defined by an insurance policy. Section 26–31–106(a)(i) makes it clear WIGA is obligated to pay covered claims. Section 26–31–103(a)(ii) defines "covered claims" as unpaid claims arising out of and within the coverage of an insurance policy. Section 26–31–103(a)(ii)(D) clearly excludes from "covered claims" supplementary payment obligations, including attorney fees. Giving the statutory language its plain and ordinary meaning, we conclude the legislature intended to exclude attorney fees from the definition of "covered claim." Because § 26–31–106(a)(i) and (ii) provide that WIGA is obligated to pay "covered claims" and is deemed the insurer to the extent of its obligation for the covered claims, we conclude the legislature did not

intend for WIGA to be obligated for attorney fees.

[¶ 38]   To construe the statutory language as WMC would have us do would require us to ignore the plain language chosen by the legislature.   We have said before that the omission of words from a statute is considered to be an intentional act by the legislature and we will not read words into a statute when the legislature has chosen not to include them.   *Kennedy,* ¶ 14, 205 P.3d at 1004.   When statutory words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature.   *Id.*   The definition of "covered claims" the legislature adopted expressly excludes attorney fees. Absent a clear indication that the legislature did not intend the statute to mean what it says, we conclude WIGA was not responsible for WMC's attorney fees.

[¶ 39]   We affirm the district court's orders granting summary judgment in favor of WIGA.