**CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Oklahoma Property and Casualty Insurance Guaranty Association, and Texas Property and Casualty Insurance Guaranty Association, Appellants**

v.

**HILL BROTHERS TRANSPORTATION, INC., Appellee**

NO. 03–15–00314–CV

Court of Appeals of Texas, Austin.

Filed: May 19, 2016

Rehearing Overruled July 12, 2016

Marnie A. McCormick, Adrian R. Ciechanowicz, Duggins Wren Mann & Romero, LLP, Austin, TX, for appellee.

Daniel J. Price, Stone Loughlin & Swanson LLP, Austin, TX, for appellant.

Before Chief Justice Rose, Justices Pemberton and Field

## *OPINION*

Scott K. Field, Justice

In four issues, California Insurance Guarantee Association (CIGA), Oklahoma Property and Casualty Insurance Guaranty Association (OPCIGA), and Texas Property and Casualty Insurance Guaranty Association (TPCIGA) (collectively, the Guaranty Associations) appeal the trial court's grant of final summary judgment in favor of Hill Brothers Transportation, Inc. In a single "cross-point," Hill Brothers contends that the Guaranty Associations lack standing to pursue their claims. Because we conclude that CIGA lacks standing, that TPCIGA and OPCIGA have standing, and that TPCIGA's and OPCIGA's claims are not barred by limitations, we will vacate and dismiss for want of jurisdiction in part and reverse and remand in part.

## BACKGROUND [1]

Hill Brothers purchased a workers' compensation and employers' liability insurance policy from Legion Insurance Company with a policy period from September 1, 2001, to September 1, 2002 (the Policy). The Policy required Hill Brothers to pay monthly premiums to Legion and included a $250,000 per claim deductible. The Policy also included deductible endorsements providing that Legion would pay workers' compensation benefits, including amounts subject to the deductible, on Hill Brothers' behalf and that Hill Brothers would reimburse Legion up to the deductible amount.

Hill Brothers also entered into a deductible reimbursement arrangement with Mutual Indemnity (Bermuda) Ltd. Under this arrangement, Mutual Indemnity would pay the deductible amounts due under the Policy directly to Legion on Hill Brothers' behalf, and Hill Brothers would reimburse Mutual Indemnity.

In April 2002, Legion was placed in rehabilitation pursuant to an order from a Pennsylvania court. Hill Brothers stopped paying the required premiums to Legion, and in May 2002, Legion sent Hill Brothers a notice that Legion was cancelling the Policy effective June 6, 2002. In October 2002, Legion was designated as an impaired insurer by the Texas Commissioner of Insurance, and in July 2003, a Pennsylvania court declared Legion insolvent and ordered that Legion be liquidated.

Legion's impairment and insolvency led to the involvement of the Guaranty Associations. The Guaranty Associations are entities created and governed by the laws of their respective states and consist of insurers operating within those states. These associations assess contributions from solvent member insurers and maintain a guaranty fund that assumes insolvent insurers' obligations with respect to statutorily defined claims. *See, e.g., Latter v. Autry,* 853 S.W.2d 836, 837 (Tex.App.–Austin 1993, no writ); *see also* Tex. Ins. Code art. 21.28–C, § 6 ("[TPCIGA] is a nonprofit, unincorporated legal entity composed of all member insurers, who must be members of the association as a condition of their authority to transact insurance in this state.").[2]

1. Unless otherwise indicated, the facts recited herein are undisputed.

2. *See* Act of May 12, 1971, 62d Leg., R.S., ch. 360, § 1, 1971 Tex. Gen. Laws 1362, repealed by Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18(a)(6), 2005 Tex. Gen. Laws 1752, 2187 (current version codified at Tex. Ins. Code § 462.001–.351). Because Legion was

designated an impaired insurer in Texas in 2002 and Legion's liquidation was ordered by a Pennsylvania court in 2003, we must apply the statutes governing the Guaranty Associations as they existed at those times. *See Latter v. Autry,* 853 S.W.2d 836, 836 n. 1 (Tex. App.–Austin 1993, no writ) ("Because American Pacer Insurance Company became im-

After Legion was placed in liquidation, the Guaranty Associations paid workers' compensation claims filed under the Policy on Legion's behalf. TPCIGA made payments on covered claims from October 2003 until February 2007, OPCIGA made payments from September 2003 until April 2009, and CIGA made payments from March 2003 until April 2007.

From the inception of the Policy until 2005, Legion, and later Legion in Liquidation, invoiced Mutual Indemnity for deductible payments made by Legion, Legion in Liquidation, and the Guaranty Associations. However, in October 2005, Mutual Indemnity informed Legion in Liquidation that it no longer had sufficient funds to pay additional claims. Beginning in December 2005, Legion in Liquidation sent Hill Brothers a series of letters informing Hill Brothers of its obligations and including invoices for unpaid deductibles. Mutual Indemnity eventually made an additional payment to Legion in Liquidation, but although this payment fully reimbursed Legion in Liquidation for the amounts Legion had paid on Hill Brothers' behalf, deductible amounts remained due to the Guaranty Associations.

On March 13, 2009, the Guaranty Associations sent a letter to Hill Brothers demanding that Hill Brothers reimburse the Guaranty Associations within 30 days for the amounts they had paid on behalf of Hill Brothers under the policy. Hill Brothers did not reimburse the Guaranty Associations for the outstanding deductible amounts, and on March 31, 2009, the Guaranty Associations filed their original petition in this case.[3] Their petition asserted that Hill Brothers had breached its obligations under the Policy's deductible endorsements by failing to reimburse the Guaranty Associations for the payments the Associations had made within the deductible limits.

The Guaranty Associations filed a motion for summary judgment, which the trial court denied.[4] Hill Brothers then filed a traditional motion for summary judgment, arguing that it could conclusively establish that Hill Brothers had not breached any contractual obligation to the Guaranty Associations, that any alleged breach did not cause the Guaranty Associations damages, and that the Guaranty Associations' claims were barred by limitations. Hill Brothers also filed a no-evidence motion for summary judgment arguing that the Guaranty Associations could not prove the essential elements of their breach-of-contract claim and a motion to dismiss arguing that the Guaranty Associations lack standing to sue Hill Brothers for breach of contract. The trial court denied Hill Brothers' motion to dismiss, denied Hill Brothers' no-evidence motion for summary judgment, and granted Hill Brothers' traditional motion for summary judgment. In its final summary judgment, the trial court explained that it was granting the traditional motion for summary judgment "on limitations only—*i.e.,* the Court finds that Plaintiffs' claims are barred by the four-year statute of limitations". This appeal followed.

paired under the Guaranty Act in October 1990, we must focus on the Guaranty Act as it appeared at that time."). Accordingly, all references herein to state insurance codes are to the statutes as they appeared in 2002 through 2003.

3. Guaranty associations from several additional states were originally plaintiffs in this case, but the trial court later issued an agreed order dismissing their claims, and they are not parties to this appeal.

4. The Guaranty Associations have not appealed the trial court's order denying their motion for summary judgment.

## DISCUSSION

### Standing

*Applicable Law and Standard of Review*

■ In its "cross-point," Hill Brothers contends that the Guaranty Associations lack standing to sue Hill Brothers for allegedly breaching the Policy. "Standing is a constitutional prerequisite to suit." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex.2012). "The standing inquiry focuses on the question of who may bring an action." *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex.2015) (per curiam) (internal quotation marks omitted). "Courts lack subject-matter jurisdiction to adjudicate disputes initiated by parties lacking standing," and "[w]hether a court has subject-matter jurisdiction is a question of law." *Id.* "Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993). Because standing is jurisdictional, we will address it before turning to the merits of this appeal. *See Halliburton Co. v. KBR, Inc.*, 446 S.W.3d 551, 557 (Tex.App.–Houston [1st Dist.] 2014, no pet.) ("Because it is a threshold matter, we consider the jurisdictional issues first before discussing the merits of the appeal.").

■ "A plaintiff establishes standing to maintain a breach-of-contract action by demonstrating that it has an enforceable interest as a party to the contract, as an assignee of a party, or as a third party beneficiary." *Republic Petroleum LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 430 (Tex.App.–Houston [1st Dist.] 2015, pet. denied); *see Hamilton v. Washington*, No. 03–11–00594–CV, 2014 WL 7458988, at *9 (Tex.App.–Austin Dec. 23, 2014, no pet.) (mem.op.) ("Under the general law of contracts, only parties to a contract have the right to complain of a breach of the agreement."). The Guaranty Associations do not allege that they were parties to the Policy. Instead, they argue that their enabling statutes grant them the right to step into the shoes of an insolvent insurer, including the right to sue an insured for breach of the contract between the insured and the insurer.

Therefore, we must determine whether the Guaranty Associations have established that the enabling statute of each association grants the association standing to sue Hill Brothers for breach of the Policy. *See Heckman*, 369 S.W.3d at 150 ("The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction."); *Jasek v. Texas Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 528 (Tex.App.–Austin 2011, no pet.) ("When standing to bring a particular type of lawsuit has been conferred by statute, we use that statutory framework to analyze whether the petition has been filed by a proper party. The party seeking relief must allege and establish standing within the parameters of the statutory language.") (citation omitted). We must dismiss the claims of any association lacking standing. *See Heckman*, 369 S.W.3d at 150 ("Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it.").

■ Our primary objective in construing statutes is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or unless the plain meaning would lead to absurd or nonsensical results that the Legislature could not have intended. *City of Rockwall*

*v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see* Tex. Gov't Code § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). The proper construction of a statute is a question of law we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex.2008); *Brown v. Nero*, 477 S.W.3d 448, 450 (Tex.App.–Austin 2015, pet. denied).

### TPCIGA

■ The Guaranty Associations argue that the following provision in the Texas Property and Casualty Insurance Guaranty Act (Texas Guaranty Act) grants TPCIGA standing to sue Hill Brothers for breach of the Policy:

> The association shall undertake to discharge the policy obligations of the impaired insurer, including the duty to defend insureds under a liability policy, to the extent that the policy obligations are covered claims under this Act. *In performing its statutory obligations, the association may also enforce any duty imposed on the insured party or beneficiary under the terms of any policy of insurance within the scope of this Act.*

Tex. Ins. Code art. 21.28–C § 8(b) (emphasis added). We agree. Under the Policy, Hill Brothers had a duty to pay a $250,000 per claim deductible. When TPCIGA stepped into the shoes of the insolvent Legion to pay workers' compensation claims on Hill Brothers' behalf, it also obtained the statutory right to enforce the deductible endorsements against Hill Brothers.

Moreover, the Texas Guaranty Act expressly provides that TPCIGA has the same causes of action against an insured that the impaired insurer would have had:

> The association does not have a cause of action against the insured of the impaired insurer for any sums it has paid out *except those causes of action the impaired insurer would have had if the sums had been paid by the impaired insurer* and except as provided in Subsection (b) of this section.

*Id.* § 11(a) (emphasis added). In this case, that would have included the right to sue Hill Brothers for reimbursement of the deductibles. Because Legion would have had a cause of action against Hill Brothers for reimbursement of the deductible amounts it paid on Hill Brothers' behalf, TPCIGA likewise has a cause of action under section 11(a) to recover the deductible amounts from Hill Brothers.[5]

Accordingly, we conclude that TPCIGA has standing to bring this suit, and we overrule Hill Brothers' cross-point with respect to TPCIGA.

---

**5.** The Supreme Court of Wyoming considered language similar to that of the Texas Guaranty Act in *Wyoming Medical Center, Inc. v. Wyoming Insurance Guaranty Association*, 225 P.3d 1061 (Wyo.2010), and concluded that the Wyoming Insurance Guaranty Association (WIGA) was entitled to recover deductibles for claims it had paid on behalf of an insolvent insurer's insured. WIGA sued the insured to recover the deductibles, and the insured argued that WIGA's claims were barred by an earlier court ruling that the insured was not obligated to pay the deductibles to its insolvent insurer. *Id.* at 1062. The Wyoming Supreme Court noted that Wy- oming's Insurance Guaranty Association Act provided that WIGA shall "be deemed the insurer to the extent of its obligation of the covered claims and to that extent has all rights, duties and obligations of the insolvent insurer as if the insurer were not insolvent" and that WIGA "has no cause of action against the insolvent insurer's insured for any sums it has paid out except the causes of action as the insolvent insurer would have had if it had paid those sums." *Id.* at 1065. The court concluded that res judicata did not bar WIGA's suit and affirmed the trial court's grant of summary judgment in WIGA's favor. *See id.* at 1068.

*OPCIGA*

The Oklahoma Property and Casualty Insurance Guaranty Association Act (Oklahoma Guaranty Act) includes the following provisions:

[OPCIGA] shall:

* * *

Be deemed the insurer to the extent of the obligations on covered claims and to that extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent....

* * *

Have standing to appear before any court of this state which has jurisdiction over an impaired or insolvent insurer for whom the Association is or may become obligated pursuant to the provisions of the [Oklahoma Guaranty Act]. Such standing shall extend to all matters germane to the powers and duties of the Association including, but not limited to, proposals for rehabilitation, acquisition, merger, reinsuring, or guaranteeing the covered policies of the impaired or insolvent insurer, and the determination of covered policies and contractual obligations of the impaired or insolvent insurer.

Okla. Stat. tit. 36, § 2007(A)(2), (8).

We conclude that these provisions grant OPCIGA standing to exercise the rights Legion would have had if it had not become insolvent, including bringing a breach-of-contract claim against Hill Brothers to recover the deductibles. *See Oklahoma ex rel. Doak v. Staffing Concepts Int'l, Inc.*, No. CIV–12–409–C, 2014 WL 296643, at *2 (W.D.Okla. Jan. 24, 2014) (citing Okla. Stat. tit. 36, § 2007 and noting that "the guaranty associations may independently seek to recover deductible reimbursements from [the insured]"); *Wyoming Med. Ctr., Inc. v. Wyoming Ins.*

*Guar. Ass'n*, 225 P.3d 1061 (Wyo.2010) (interpreting similar statutory language and affirming summary judgment in favor of state guaranty association in suit to recover deductibles from insolvent insurer's insured). Hill Brothers has not cited any Oklahoma statute or case law to the contrary. Accordingly, we overrule Hill Brothers' cross-point with respect to OPCIGA.

*CIGA*

The Guaranty Associations cite two authorities for the proposition that CIGA has standing to sue Hill Brothers for breach of the Policy. First, they quote the first sentence of the following provision:

[CIGA] shall be a party in interest in all proceedings involving a covered claim, and shall have the same rights as the insolvent insurer would have had if not in liquidation, including, but not limited to, the right to: (1) appear, defend, and appeal a claim in a court of competent jurisdiction; (2) receive notice of, investigate, adjust, compromise, settle, and pay a covered claim; and (3) investigate, handle, and deny a noncovered claim. *[CIGA] shall have no cause of action against the insureds of the insolvent insurer for any sums it has paid out, except as provided by this article.*

Cal. Ins. Code § 1063.2(b) (emphasis added). Although the first sentence of this provision grants to CIGA the rights Legion would have had if it had not become insolvent, we conclude that the second sentence, italicized above and not quoted by CIGA, clarifies that CIGA may not sue an insured such as Hill Brothers except as explicitly provided by statute. The Guaranty Associations have not cited any other provision in the statute that would allow CIGA to sue Hill Brothers to recover the deductibles, and we are not aware of any.

Second, the Guaranty Associations cite *In re Imperial Insurance Co.,* 157 Cal. App.3d 290, 203 Cal.Rptr. 664 (Ct.App. 1984). In *Imperial,* the California Court of Appeal stated, "For the most part CIGA administers a claim as the insurer would have had it remained solvent. CIGA is given the same rights as the insolvent insurer would have had if not in liquidation.... A necessary concomitant of these rights and duties is entitlement to the policy deductible." *Id.* at 296, 203 Cal.Rptr. 664 (citation and internal quotation marks omitted). However, in *Imperial,* the "pivotal issue" was "who is entitled to the deductibles paid by policyholders to an insurance company which becomes insolvent"—the California Insurance Commissioner as liquidator on behalf of the creditors of the insolvent insurers or CIGA. *See id.* at 292, 203 Cal.Rptr. 664. CIGA had filed a petition in liquidation proceedings for an order directing the state insurance commissioner to pay CIGA the deductibles. The court concluded that CIGA was entitled to the deductibles because "the deductibles were not assets of the insurance companies but were held in trust for the insureds pending the outcome of the specific claim or suit for which the deductible had been paid." *Id.* at 295, 203 Cal.Rptr. 664. The *Imperial* court never addressed whether CIGA has standing to sue an insured to enforce deductible obligations. We therefore conclude that *Imperial* is not applicable here.

Because we have determined that the authorities cited by the Guaranty Associations do not support CIGA's standing and because we are not aware of any statute or case law granting CIGA standing to bring a breach-of-contract claim against Hill Brothers, we conclude that the Guaranty Associations have failed to establish that CIGA has standing in this suit. Accordingly, we sustain Hill Brothers' cross-point with respect to CIGA and will dismiss CIGA's claims with prejudice. *See Heckman,* 369 S.W.3d at 150 ("[I]f a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it."); *Jasek,* 348 S.W.3d at 528 ("The party seeking relief must allege and establish standing within the parameters of the statutory language.").

**Statute of Limitations**

■ Having determined that TPCIGA and OPCIGA have standing, we must now consider whether the trial court erred in concluding that their claims are barred by limitations.[6] The parties agree that Texas's four-year statute of limitations applies to these claims. *See* Tex. Civ. Prac. & Rem. Code § 16.051; *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex.2002) (per curiam) (noting four-year statute of limitations applies to breach-of-contract claims). The parties disagree about when the Guaranty Associations' cause of action for breach of contract accrued.[7]

■ "Generally a cause of action accrues when facts come into existence [that] authorize a claimant to seek a judi-

---

**6.** We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). In reviewing a trial court's ruling on summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional motion for summary judgment, the moving party must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

**7.** Because we must dismiss CIGA's claims, in this portion of the opinion, the term "Guaranty Associations" should be understood to include only TPCIGA and OPCIGA.

cial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another." *American Star Energy & Minerals Corp. v. Stowers,* 457 S.W.3d 427, 430 (Tex.2015) (internal quotation marks omitted). "It is well-settled law that a breach of contract claim accrues when the contract is breached." *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 314 (Tex. 2006) (internal quotation marks omitted); *see Fish v. Texas Legislative Serv.,* No. 03–10–00358–CV, 2012 WL 254613, at *8 (Tex.App.–Austin Jan. 27, 2012; no pet.) (mem.op.) ("A cause of action for breach of contract generally accrues when the breach occurs, and limitations begins to run upon accrual."). "A party breaches a contract if it fails to perform an act it promised to perform." *Kendziorski v. Saunders,* 191 S.W.3d 395, 403 (Tex.App.– Austin 2006, no pet.). "When a claim accrues is a question of law reviewed de novo." *Berry v. Encore Bank,* No. 01–14– 00246–CV, 2015 WL 3485970, at *4 (Tex. App.–Houston [1st Dist.] June 2, 2015, pet. denied) (mem.op.) (citing *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990)).

Hill Brothers argues that the Guaranty Associations' causes of action, if any, accrued when Hill Brothers allegedly breached the Policy by ceasing to pay premiums. According to Hill Brothers, because it ceased paying premiums in 2002 and the Guaranty Associations did not file suit until 2009, all of the Guaranty Associations' claims are barred by limitations. Hill Brothers further argues that even if limitations did not begin to run until the Guaranty Associations made their initial payments of a covered claim under the Policy, the Guaranty Associations' claims are still barred because they made those initial claims in 2003.

The Guaranty Associations, in contrast, argue that their causes of action accrued when they demanded that Hill Brothers reimburse them for the deductibles and Hill Brothers breached the Policy by failing to comply. The Guaranty Associations also argue that, in any event, they made some payments on Hill Brothers' behalf within the limitations period and that claims for reimbursement for these payments, at least, are not barred by limitations.

We agree with the Guaranty Associations that the statute of limitations did not begin to run when Hill Brothers ceased paying premiums. Although Legion cancelled the policy because of Hill Brothers' nonpayment, this cancellation did not negate either side's ongoing obligations concerning workers' compensation claims arising during the policy period. Just as Legion, and later the Guaranty Associations acting in its stead, were obligated to pay claims on Hill Brothers' behalf even after the end of the policy period, so too Hill Brothers remained obligated to reimburse Legion for the amounts paid within the deductible limits.

We also agree with the Guaranty Associations that the statute of limitations was not triggered until demand was made and refused. The Policy provides that Legion would pay the deductible amount for Hill Brothers but that Hill Brothers must reimburse Legion within 30 days after it sent Hill Brothers notice that payment was due. Because the Policy required Legion to make demand before receiving payment, Legion could not have sued Hill Brothers for nonpayment of the deductibles before making demand. Therefore, the Guaranty Associations' claims against Hill Brothers for nonpayment *accrued after they made demand for reimbursement and Hill Brothers failed to pay within 30 days. See Hardin v. Lella,* No. 03–14–00607–CV, 2015 WL 6830598, at *2 (Tex.App.–Austin Nov. 4, 2015, no pet.) (mem.op.) ("[I]f a

demand is an integral part of the cause of action, or a condition precedent to sue, the statute does not begin to run until demand is made unless the demand is waived or is unreasonably delayed."); *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 5 (Tex.App.–Dallas 1994, no writ) (same); *Cummins & Walker Oil Co., Inc. v. Smith*, 814 S.W.2d 884, 887 (Tex.App.–San Antonio 1991, no writ) ("[W]here the parties so frame their contract as to make prior demand an integral part of a cause of action or a condition precedent to a right to sue, the statute of limitations does not begin to run until demand is made. Limitations will run from the date of demand or refusal."); *see also Canal Ins. Co. v. Pro Search*, 286 Ga.App. 164, 648 S.E.2d 497, 498 (Ct.App.2007) (workers' compensation insurance case in which court concluded, "Here, the contract did not provide that the demand had to be made at any particular time, and Canal made its claim while payments under the contract were ongoing. Therefore, the statute of limitation began to run at the time of the demand.").

 Although the Policy does not specify when Legion was required to make demand for deductible reimbursements, Legion, and later the Guaranty Associations, were required to make demand within a reasonable time, which is ordinarily within the limitations period. *See Jackson v. Carlson*, No. 03–08–00429–CV, 2009 WL 638848, at *3 (Tex.App.–Austin Mar. 12, 2009, no pet.) (mem.op.) ("[I]n the absence of mitigating circumstances, a time coincident with the running of the Statute will be deemed reasonable, and if the demand is not made within that period the action will be barred.") (internal quotation marks omitted); *Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 671 (Tex. App.–Texarkana 1996, writ denied) ("[I]n the absence of mitigating circumstances, the law will ordinarily consider a reasonable time as being coincident with the running of the statute, and an action will be barred if a demand is not made within that period.").

The Guaranty Associations made demand in March 2009, within four years of the time when Mutual Indemnity ceased to make deductible reimbursements on Hill Brothers' behalf. Because the Guaranty Associations made demand within the limitations period, we conclude that they made demand within a reasonable time. The statute of limitations began to run 30 days after the Guaranty Associations made demand, and the Guaranty Associations filed suit within the limitations period. The trial court, therefore, erred in ruling that the Guaranty Associations' claims were barred by limitations. Accordingly, we sustain the Guaranty Associations' issues to the extent they contend that the trial court erred by granting summary judgment against TPCIGA and OPCIGA.

## CONCLUSION

We vacate the trial court's final summary judgment to the extent that it grants summary judgment against CIGA, and we dismiss CIGA's claims with prejudice for lack of jurisdiction. We also reverse the remainder of the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.