## Virginia Property and Casualty Insurance Guaranty Association

### v.

## International Insurance Company, et al.

Record No. 871130

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Gary J. Spahn (James C. Roberts; Edward E. Scher; Mays & Valentine*, on briefs), for appellants.

*John M. Oakey, Jr. (Joseph L.S. St. Amant; M. Kelley Johnston; McGuire, Woods, Battle & Boothe*, on brief), for appellee International Insurance Company.

*Timothy Michael Kaine (G. Kenneth Miller; Mezzullo, McCandlish & Framme*, on brief), for appellee Martha L. Tunstall.

No brief or argument for appellee Tarrance Foster.

Justice Lacy delivered the opinion of the Court.

In this appeal, we must determine whether the Virginia Insurance Guaranty Association Act (the Act)[1] requires an injured

---

[1] The Act, Code §§ 38.1-756.1 - 38.1-774 (1981 and Supp. 1985), was re-written effective July 1, 1986, *see* Acts 1986 ch. 562, §§ 38.2-1600 - 38.2-1623 (1986 and Supp. 1989), changing the Association name from Virginia Insurance Guaranty Association to its current name, Virginia Property and Casualty Insurance Guaranty Association. Because the relevant events in this case occurred before July 1, 1986, the Association's liability in this case must be determined under the original statute. *See* Code § 1-16.

party to exhaust all rights he may have under his own insurance policy prior to receiving payment under the Act, when the tortfeasor's liability insurance carrier has become insolvent.

Terrance Foster was injured in an automobile accident caused by Martha Tunstall. Foster was awarded a $50,000 judgment against Tunstall. Tunstall was insured by Iowa National Mutual Insurance Company (Iowa National) with coverage limits of $50,000 for any one injury and $100,000 for all injuries arising out of one accident. While the suit was pending, Iowa National was declared insolvent and, therefore, was unable to pay the judgment entered against Tunstall.

Foster was insured by International Insurance Company (International). His policy included uninsured motorist coverage as required by Virginia law with limits of $25,000 for any one injury and $50,000 for all injuries arising out of any one accident. Under the policy an "uninsured motor vehicle" included one "[t]o which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insurance company . . . is or becomes insolvent."

Foster filed a demand for payment on the $50,000 judgment with International under his uninsured motorist coverage. He also filed a demand for payment with the Virginia Property and Casualty Insurance Guaranty Association (the Association) because of Iowa National's insolvency.

International, maintaining that it had no liability, filed a motion for judgment seeking a declaration that the Association was responsible for the entire $50,000 judgment. The trial court ruled that the Association assumed the liabilities of Iowa National when it became insolvent and, therefore, the Association was the primary insurer and responsible for the entire $50,000 judgment. On appeal, the Association argues that both the policy underlying the Act and its plain language require reversal of the trial court's decision. We agree.

The purpose of the Act is "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer". Code § 38.1-757. Although the trial court correctly recognized that the Association was created as an "insurer of the last resort," it misunderstood the nature of the obligations assumed by the Association on the insolvency of an insurer.

Relying on Code § 38.1-763(1)(b), International and the trial court assumed that the rights and obligations of the Association are in all respects identical to those of the insolvent insurer, that the Association merely "stepped into the shoes of" the insolvent insurer. Based on this premise, the trial court reasoned that the Association was liable to Tunstall in the same manner and to the same extent as Iowa National. It concluded that since Tunstall had no other insurance, the $50,000 judgment was the liability of the Association. The trial court's application of § 38.1-763(1)(b) also led it to hold that the insolvency of Iowa National was cured by the existence of the Association, thereby defeating a claim under the uninsured motorist provisions of Foster's insurance policy, based on the insolvency of the insurance company.

■ Section 38.1-763(1)(b), however, is merely one section in the legislative scheme that deals with claims against an insolvent insurance company. It must be read in conjunction with other sections of the Act which further define the Association's obligation. Section 38.1-763(1)(a) limits the Association's liability to $300,000, except in the case of a workers' compensation claim. Similarly, not all claims will qualify as "covered claims." For example, a claim will not come within the definition of a "covered claim" if the insured or claimant was not a Virginia resident at the time of the insured event or if it represents amounts due to an insurer as a subrogation recovery. Code § 38.1-760(4). A further limitation on the obligation of the Association is the exhaustion requirement and set-off provision contained in § 38.1-767.

■ The Act, considered as a whole, clearly indicates that the General Assembly did not intend that the Association merely "step into the shoes" of the insolvent insurer. Establishment of the Association affords a mechanism for the timely payment of appropriate claims to avoid financial loss to certain classes of people. But it is not merely a solvent substitute for an insolvent insurance company. Nor do the provisions of the Act operate to nullify Iowa National's insolvency for all purposes.

■ The insolvency of Iowa National created a legal relationship between Tunstall and the Association which reflected the terms of the Iowa National policy only to the extent they were not otherwise limited by the Act. The extent of the Association's liability for the $50,000 judgment must be considered in the context of the entire Act.

We now turn to the application of Code § 38.1-767(1) to this case. It provides in pertinent part:

Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable [by the Association] on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy.

This exhaustion requirement applies in instances where the claim: (1) meets the definition of "covered claim" under the Act; and (2) can validly be asserted against a solvent insurer under an insurance policy. Here, the claim for $50,000 is a "covered claim" under the Act and is a claim for which a person, Foster, can seek recovery up to $25,000 from International under the uninsured motorist coverage of his insurance policy.[2] Foster, therefore, is required to exhaust his claims against International before the Association must make payment on the $50,000 judgment. The Association is entitled to reduce the amount it pays by the amount Foster receives from International.

International and Tunstall argued in the trial court and here that the purpose of the Act would be defeated if the Association is not liable for the full amount of the judgment. They assert that the subrogation rights arising from International's payment under an uninsured motorist policy will expose Tunstall to a liability of $25,000. Such a debt would be a direct result of the insolvency of Tunstall's insurance company — the precise type of financial loss sought to be avoided by the Act. This argument assumes that the subrogation rights were not affected by the enactment and subsequent amendments to the Virginia Insurance Guaranty Association Act.[3] We do not reach that issue for decision; its resolution is unnecessary to the decision in this case.

---

[2] It is immaterial in this case whether the "claimant" against the Association is Tunstall or Foster. The Section only requires that the person who has a policy claim exhaust that claim, regardless of whether he is the injured party or the tort-feasor.

[3] See, e.g., Code §§ 38.1-763(c) (1981 and Supp. 1985), 38.2-1600, 38.2-1603 (1986 and Supp. 1989).

For the reasons stated above, we will reverse the judgment of the trial court and enter judgment for Virginia Property and Casualty Insurance Guaranty Association.

*Reversed and final judgment.*