ACCEPTED
03-15-00314-CV
7126183
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 2:07:29 PM
JEFFREY D. KYLE
CLERK

## CAUSE NO. 03-15-00314-CV

IN THE THIRD COURT OF APPEALS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 2:07:29 PM
JEFFREY D. KYLE
~~Clerk~~

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, OKLAHOMA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, AND TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, *Appellants*

v.

HILL BROTHERS TRANSPORTATION, INC., *Appellee*

APPEAL FROM CAUSE NO. D-1-GN-09-001010
201ST JUDICIAL DISTRICT COURT OF TRAVIS COUNTY, TEXAS
HON. LORA LIVINGSTON PRESIDING

## APPELLANTS' REPLY BRIEF

Dan Price (SBN 24041725)
James Loughlin (SBN 00795489)
STONE LOUGHLIN & SWANSON, LLP
P.O. Box 30111
Austin, Texas 78755
(512) 343-1300
(512) 343-1385  Fax
dprice@slsaustin.com

*Attorneys for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     ARGUMENTS IN REPLY TO APPELLEE'S BRIEF. . . . . . . . . . . . . . . . 4

    A.    The Guaranty Associations Present Their Own Breach of
        Contract Claims .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Policy, A Continuing Contract, Was Neither
        Repudiated Nor Terminated by Legion .. . . . . . . . . . . . . . . . . . . . . . 6

        1.    Legion's Cancellation of the Policy was Authorized
             by the Labor Code and the Policy.. . . . . . . . . . . . . . . . . . . . . 6

        2.    Cancellation of the Policy in Accordance With Its
             Terms is Not a Repudiation of the Policy.. . . . . . . . . . . . . . . 7

        3.    Cancellation of Coverage for Nonpayment of
             Premium Did Not Terminate the Policy or Legion's
             Obligations Under the Policy. . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    Hill Bros. Argues for a Legally Incorrect and Absurd
        Result. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.    Conclusion in Reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.    RESPONSE TO HILL BROS.' CROSS-APPEAL. . . . . . . . . . . . . . . . . . 12

    A.    The Guaranty Associations Are Proper Parties to Sue for
        Breach of the Policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1.  The Enabling Statutes Grant the Guaranty Associations the Same Rights and Duties Under the Policy as Legion Would Have Had if Not Insolvent, Including the Right to Reimbursement of Deductibles.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    (a)  CIGA's Statutory Rights and Obligations Under California Law. . . . . . . . . . . . . . . . . . . . . . 13

    (b)  OPCIGA's Statutory Rights and Obligations Under Oklahoma Law. . . . . . . . . . . . . . . . . . . . . 14

    (c)  TPCIGA's Statutory Rights and Obligations Under Texas Law. . . . . . . . . . . . . . . . . . . . . . . . 15

2.  The Pennsylvania Insurance Receivership Laws Acknowledge the Guaranty Associations' Right to Collect Deductibles from Insureds.. . . . . . . . . . . . . . . . . . . 16

3.  Construing Similar Statutory Provisions, the Wyoming Supreme Court Held that the Wyoming Insurance Guaranty Association Has the Right to Sue an Insured for Failure to Reimburse Deductibles. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4.  The Guaranty Associations' Enabling Statutes Create Contractual Privity Between Hill Bros. and Each of the Guaranty Associations Related to the Covered Claims Paid Under the Policy. . . . . . . . . . . . . . . . . 19

5.  Hill Bros.' Citation of Reinsurance Cases is Misplaced. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.  Conclusion in Response to Hill Bros. Cross-Appeal. . . . . . . . . . . . . 23

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# INDEX OF AUTHORITIES

**Cases:**

*General Reinsurance Corp. v. Am. Bankers Ins. Co.*,
996 A.2d 26 (Pa. Commw. Ct. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Group Life and Health Ins. Co. v. Turner*,
620 S.W.2d 670, 673 (Tex.App.–Dallas 1981, no writ) . . . . . . . . . . . . . . . . . . 7-8

*Hudson Environmental Servs., Inc. v. New Jersey Property-Liability Ins. Guar. Ass'n*,
372 N.J.Super. 284, 308, 858 A.2d 39, 53 (N.J. Sup. Ct. 2004). .. . . . . . . . . . . . 20

*In re Imperial Ins. Co.*,
157 Cal. App. 3d 290, 296 (Cal. Ct. App. 1984). . . . . . . . . . . . . . . . . . . . . . . . 13

*Moore v. Jenkins*,
109 Tex. 461, 211 S.W. 975 (1919). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Okla. ex rel. Doak v. Staffing Concepts Intern., Inc.*,
CIV-12-409-C, 2014 WL 296643, *2 (W.D. Okla. Jan. 24, 2014). . . . . . . . . . . . 15

*Sembera Sec. Sys., Inc. v. Tex. Mut. Ins. Co.*,
No. 01-07-00310-CV, 2009 WL 214573, *7
(Tex.App.–Houston [1st Dist.] Jan. 29, 2009, pet. denied) (mem. op.). .. . . . . . . . 8

*Texas Workers' Compensation Comm'n v. Garcia*,
893 S.W.2d 504, 523 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Va. Prop. & Cas. Ins. Guar. Ass'n v. Int'l Ins. Co.,*
238 Va. 702, 385 S.E.2d 614, 616 (Va. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wyoming Medical Center, Inc. v. Wyoming Insurance Guaranty Association*,
225 P.3d 1061, 1068 (Wyo. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19

**Statutes:**

Cal. Ins. Code §1063.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Ins. Code §1063.2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

36 Okla. Stat. Ann. § 2007(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

40 Pa. Cons. Stat. § 221.23a(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

40 Pa. Cons. Stat. § 221.23a(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21-22

40 Pa. Cons. Stat. § 221.23a(i).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16, 22

Tex. Ins. Code. art. 21.28-C § 8(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Ins. Code. art. 21.28-C § 11(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Lab. Code. § 401.001.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Lab. Code. § 406.008(a)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex. Lab. Code. § 406.031(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Lab. Code § 408.021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Rules:**

Tex. R. App. P. 9.4(i)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Appellants CIGA, OPCIGA, and TPCIGA (collectively, the "Guaranty Associations") file this their Reply in support of Appellants' Brief asking the Court to reverse the summary judgment granted against them on the issue of limitations.

## SUMMARY OF ARGUMENT

The Guaranty Associations sued Hill Bros. to recover deductible payments they made on "covered claims" within the deductible limits of the Policy from March 3, 2003 to April 28, 2009. The Policy is a continuing contract in which the contemplated performance and payment were divided into several parts and where the administration of the claims covered by the Policy was continuous and indivisible. The statute of limitations did not begin to accrue on this continuing contract until the Guaranty Associations made demand on Hill Bros. to reimburse deductibles and Hill Bros. repudiated its obligation to reimburse the deductible payments.

Hill Bros. discounts the significance of the continuing contract by presenting two legally incorrect arguments to reach an untenable and absurd result. First, Hill Bros. argues the Guaranty Associations assert Legion's breach of contract claims rather than their own. Second, Hill Bros. argues that Legion repudiated or terminated the Policy effective June 6, 2002, after Hill Bros. stopped paying premium on April 1, 2002. One or both of these actions, according to Hill Bros., triggered the statute of limitations on *any and all claims* under the Policy. Because Legion's cause of action

allegedly accrued on April 1, 2002 or June 6, 2002, Hill Bros. concludes the Guaranty Associations were required to file what would be a non-justiciable suit against Hill Bros. *as early as April 1, 2002*, for Hill Bros.' failure to reimburse the Guaranty Associations for deductible payments *the Guaranty Associations would make in the future from March 4, 2003 through April 28, 2009*.[1] The Court must reject Hill Bros.' arguments.

The Guaranty Associations present their own breach of contract claims to recover deductible payments *which they made* in accordance with the Policy for the benefit of Hill Bros.' injured workers. Deductible recoveries by the Guaranty Associations are not assets of the estate of Legion in Liquidation.

Even assuming, solely for the sake of argument, that the Guaranty Associations were asserting Legion's cause of action, the statute of limitations still did not accrue on or about April 1, 2002, as alleged. The Policy, a continuing contract, was neither terminated nor repudiated by Legion. In accordance with the express terms of the Policy and the Texas Workers' Compensation Act, Legion was permitted to cancel coverage effective June 6, 2002, for nonpayment of premium.[2] No action of either

---

[1]       Appellants' Br. at 10.

[2]       In a likely typographical error, Hill Bros. cites in its brief that the Policy was cancelled effective on both June 2, 2002, and June 6, 2002. *See* Appellee's Br. at 3 (06/06/02), 5-6, 9, 11-13 (06/02/02). Legion cancelled coverage under the Policy effective June 6, 2002, at 12:01 a.m. (CR 2095).

party terminated Legion's obligation to pay workers' compensation benefits to or for the benefit of Hill Bros.' employees injured within the Policy period. Similarly, no action of either party terminated Hill Bros.' obligation to reimburse Legion to the extent such benefit payments were made within the deductible limits of the Policy. Because the Policy was neither terminated nor repudiated by Legion on or about April 1, 2002, the statute of limitations did not accrue until Hill Bros. refused to reimburse the Guaranty Associations on demand for their payment of deductibles.

On cross-appeal, Hill Bros. argues the Guaranty Associations do not have standing to bring their breach of contract claims. The Court must reject Hill Bros.' appeal because each of the Guaranty Associations is empowered with all of the rights, duties, and obligations that the insolvent insurer would have had under the Policy. These rights, duties, and obligations with respect to the Policy create contractual privity between the insured and each guaranty association to the extent of the guaranty associations' payment of "covered claims" under the Policy.

## ARGUMENT AND AUTHORITIES

### I. ARGUMENTS IN REPLY TO APPELLEE'S BRIEF

The Guaranty Associations' claims against Hill Bros. for failure to reimburse deductibles are not barred by limitations. The Guaranty Associations present their own claims to recover their own assets from Hill Bros. in accordance with the Policy. Their breach of contract claims under the Policy, a continuing contract, did not accrue until Hill Bros. refused to meet its deductible obligations by reimbursing the Guaranty Associations for their payment of "covered claims." Because Hill Bros.' refusal did not occur until after March 31, 2005 (*i.e.*, four years before suit was filed on March 31, 2009), the Guaranty Associations' claims are not barred by the statute of limitations.

### A. The Guaranty Associations Present Their Own Breach of Contract Claims

The Guaranty Associations sued Hills Bros. to recover post-impairment and post-liquidation deductible payments which they made within the deductible limits of the Policy.[3] They do not seek to recover any deductible payments made by Legion or Legion in Liquidation.[4]

---

[3]    Appellants' Br. at 10 (identifying the first and last of the deductible payments for which each of the Guaranty Associations seek reimbursement in this case).

[4]    Appellants' Br. at 10.

In accordance with Pennsylvania law, the law governing the liquidation of Legion in the Commonwealth Court of Pennsylvania, recoveries of deductible payments made by the state guaranty associations are assets of the guaranty associations and are treated as such by the insolvent insurer's estate. *See* 40 PA. STAT. § 221.23a(f)(1) ("When the policyholder reimbursements are collected, the receiver shall promptly reimburse such guaranty association for claims paid that were subject to the deductible."); 40 PA. STAT. § 221.23a(g) ("Any resulting recoveries under the deductible reimbursement policy shall be payable to the guaranty associations to the extent of claims paid within the deductible.").[5] The Pennsylvania statute expressly acknowledges that the state guaranty associations may collect deductibles directly from the policyholder. *See* 40 PA. STAT. § 221.23a (i)(2) ("To the extent that guaranty associations pay claims within the deductible amount but are not reimbursed by either

---

[5] The Pennsylvania statute, 40 PA. STAT. § 221.23a, is available at Tab 6, App., Appellants' Br. This Pennsylvania law is consistent with a similar Texas statute which became effective on September 1, 2005. *See e.g.*, TEX. INS. CODE ANN. § 443.213(h)(1) ("At the time the policyholder reimbursements are collected, the receiver shall promptly forward those amounts to the guaranty association, based on the claims paid by the guaranty association that were subject to the deductible."). Because the statute was not in effect on the date Legion became an impaired insurer on October 25, 2002, the statute is cited for illustrative purposes only. *See* Appellants' Br. at 2, n. 2.

the receiver under this section or by policyholder payments from the guaranty association's own collection efforts, the guaranty association shall have a claim in the insolvent insurer's estate for such unreimbursed claim payments.").[6]

Because the Guaranty Associations allege only that Hill Bros. breached the Policy by failing to reimburse the Guaranty Associations for the deductible payments the Guaranty Associations made under the Policy, they are asserting their own causes of action against Hill Bros. for breach of the Policy. The Guaranty Associations are not asserting any cause of action belonging to Legion.

## B. The Policy, A Continuing Contract, Was Neither Repudiated Nor Terminated by Legion

The Policy was a continuing contract that was neither repudiated or terminated by Legion effective June 6, 2002, following Hill Bros. nonpayment of premium on April 1, 2002.[7]

### 1. Legion's Cancellation of the Policy was Authorized by the Labor Code and the Policy

In accordance with the Texas Labor Code, an insurer is authorized to cancel a workers' compensation policy for nonpayment of premium. TEXAS LABOR CODE §406.008(a)(2)(C) provides that a workers' compensation insurer may cancel a policy

---

[6]  Appellants' Br., App. Tab 6.

[7]  *See* Appellants' Br. at 29-32.

on ten days written notice for "failure to pay premium when due." The Policy tracks this statutory language in the Texas Amendatory Endorsement at CIGA 236: "We may cancel this policy. . . . we may send notice [of cancellation or nonrenewal] not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or nonrenew because of: . . . (b) Failure to pay a premium when payment was due."[8] In addition, each state specific endorsement included in the Policy, as well as the main policy language, confirm repeatedly the insurer's right to cancel the Policy for nonpayment of premium.[9] In accordance with the express language of the Policy and consistent with the Texas Labor Code, Legion was authorized to cancel the Policy for nonpayment of premium.

2.   Cancellation of the Policy in Accordance With Its Terms is Not a Repudiation of the Policy

Repudiation of a contract consists of words or conduct of a contracting party which show a fixed intention to abandon, renounce, and refuse to perform the

---

[8]   Appellant's Br., App., Tab 4 at CIGA 236.

[9]   Appellants' Br., App., Tab 4 at CIGA 221 (Workers' Compensation and Employers Liability Policy: "We may cancel this policy . . . . The policy period will end on the day and hour stated in the cancelation notice."), CIGA 229 (Kansas Cancelation and Nonrenewal Endorsement: "We may cancel this policy. . . . If this policy has been in effect for 90 days or more, we may cancel only for one of the following reasons: (a) nonpayment of premium."), CIGA 231 (Nebraska Cancelation and Nonrenewal Endorsement: "We may cancel or nonrenew this policy within the policy period . . . . the cancelation shall be effective ten (10) days after the giving of the notice if the cancelation is based on: (a) nonpayment of premiums."), CIGA 233 (Oklahoma Cancelation, Nonrenewal and Change Endorsement: "If this policy has been in effect for more than 45 days, we may cancel only for one of the following reasons: (a) Nonpayment of premium.").

contract. *Group Life and Health Ins. Co. v. Turner*, 620 S.W.2d 670, 673 (Tex. App.–Dallas 1981, no writ) (citing *Moore v. Jenkins*, 109 Tex. 461, 211 S.W. 975 (1919)).

An insurance carrier's cancellation of a workers' compensation policy for nonpayment of premium, in accordance with the express terms of the policy, is conduct consistent with the terms of the contract and does not show a fixed intention to abandon, renounce, and refuse to perform the contract. *See Sembera Sec. Sys., Inc. v. Tex. Mut. Ins. Co.*, No. 01-07-00310-CV, 2009 WL 214573, *7 (Tex.App.–Houston [1st Dist.] Jan. 29, 2009, pet. denied) (mem. op.) (holding that cancellation of a workers' comp policy for nonpayment of premium is not, as a matter of law, a breach of contract by the workers' compensation carrier).

Because the Policy, as well as applicable law, afforded Legion the express right to cancel coverage for nonpayment of premium effective June 6, 2002, Legion did not repudiate the Policy.

3.  Cancellation of Coverage for Nonpayment of Premium Did Not Terminate the Policy or Legion's Obligations Under the Policy

While the policy period ended on the day and hour stated in the cancellation notice provided to Hill Bros, in accordance with Texas Law and the Policy, Legion remained liable to provide workers' compensation benefits for all claims incurred

within the policy period and Hill Bros. remained liable to reimburse deductible payments made on all such claims.

Under the terms of the Policy, the workers' compensation insurance applies to "[b]odily injury by accident [which] must occur during the policy period."[10] When the Policy was cancelled by Legion, the contract provides that the policy period ended on the effective date of cancellation of coverage: "The policy period will end on the day and hour stated in the cancelation notice."[11]

The Policy language tracks the requirements of TEXAS LABOR CODE § 406.031(a), which mandates that coverage extends to any employee injured within the policy period. "An insurance carrier is liable for compensation for an employee's injury without regard to fault or negligence if: (1) *at the time of injury*, the employee is subject to this subtitle . . . ." *Id.* (Emphasis supplied).[12]

Under no interpretation of the Policy or Texas Law did the cancellation of coverage on June 6, 2002, terminate Legion's obligations to continue providing workers' compensation benefits to Hill Bros.' employees who were injured during the policy period.

---

[10]     *See* Appellants' Br., App., Tab 4 at CIGA 217.

[11]     *See* Appellants' Br., App., Tab 4 at CIGA 221.

[12]     The subtitle is the Texas Workers' Compensation Act. *See* TEX. LAB. CODE § 401.001.

## C. Hill Bros. Argues for a Legally Incorrect and Absurd Result

In this case, Hill Bros. argues the Guaranty Associations' breach of contract claims against Hill Bros. for failure to reimburse deductibles accrued on April 1, 2002, when Hill Bros. stopped paying premium to Legion. The logical consequence of Hill Bros.' argument is that the statute of limitations for *any* contract claim under a workers' compensation policy accrues on the date the insured elects to stop paying premium irrespective of when the actual injury occurs. This interpretation is incorrect as a matter of law and would effect an absurd result.

Hill Bros.' accrual date is incorrect as a matter of law because, if the statute of limitations accrues for any and all breach of claims on the date the insured elects to stop paying premium, then the insurer would be required to sue as early as the accrual date to recover benefits payments that would be made within the deductibles in the future. This cannot be correct. On this proposed accrual date, the insurer's claim is not yet ripe because there has been neither payment by the insured nor injury to the insurer. For this reason, the accrual date for future deductible payments cannot occur on the date the insured stops paying premium. Hill Bros.' argument to the contrary is incorrect as a matter of law.

Hill Bros.' proposed accrual date would effect an absurd result because large deductible insurers would be left in the lurch without recourse by any insured who

elects to stop paying premium prior to the end of the policy period stated in the contract. Even if an insured stops paying premium resulting in the cancellation of coverage, the insurer will remain obligated to continue providing benefits for the insured's workers injured prior to the cancellation date of the policy. If the applicable policy contains per claim or aggregate deductibles, the insured would also remain liable to reimburse deductibles in the future until the applicable deductible limit is reached. Because an injured worker is entitled to lifetime medical benefits for a compensable injury in Texas, the continuing obligations to pay benefits and reimburse deductibles will likely continue many years into the future. *See Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 523 (Tex. 1995) ("Workers covered by the Act receive lifetime medical benefits. . . ."); TEX. LAB. CODE § 408.021. If the statute of limitations expires on any and all breach of contract claims four years after the insured stops paying premium, then the insurer could never collect deductible payments made more than four years after that date even though the deductible limits had not been reached. Hill Bros.' proposed accrual date would rewrite all large deductible workers' compensation policies so that the insureds will not be liable for deductible obligations incurred more than four years after the policy period ends. Hill Bros. asks the Court to effect an absurd result.

**D.  Conclusion in Reply**

In sum, in the absence of a repudiation or termination by Legion, the statute of limitations did not begin to accrue on the Guaranty Associations' claim against Hill Bros. for breach of the Policy until they made demand on Hill Bros. and Hill Bros. repudiated its continuing obligation under the Policy to reimburse the Guaranty Associations for their payments of "covered claims" within the deductible limits of the Policy.

**II.  RESPONSE TO HILL BROS.' CROSS-APPEAL**

**A.  The Guaranty Associations Are Proper Parties to Sue for Breach of the Policy**

1.  The Enabling Statutes Grant the Guaranty Associations the Same Rights and Duties Under the Policy as Legion Would Have Had if Not Insolvent, Including the Right to Reimbursement of Deductibles

The guaranty association statutes of California, Oklahoma, and Texas direct the guaranty associations in each of the states to pay "covered claims," under policies of insurance issued by insolvent insurers licensed in their respective states. To the extent of their payment of "covered claims," the statutes grant the guaranty associations all rights, duties, and obligations under the Policy,[13] including the causes of action the

---

[13]  CAL. INS. CODE ANN. §1063.2(b) (West 2002) (CIGA "shall have the same rights as the insolvent insurer would have had if not in liquidation. . . ."); 36 OKLA. STAT. ANN. § 2007(A)(2) (West 2002) (OPCIGA shall "[b]e deemed the insurer to the extent of the obligations on covered claims and to that extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.").

insolvent insurer would have had against the insured for breach of the Policy if the insurer had not been in liquidation.

      (a)    *CIGA's Statutory Rights and Obligations Under California Law*[14]

Under California Law, Appellant CIGA "shall pay and discharge covered claims. . . ." CAL. INS. CODE §1063.2(a). CIGA is a "party in interest in all proceedings involving a covered claim," and to that extent, "shall have all rights as the insolvent insurer would have had if not in liquidation, including, but not limited to, the right to: (1) appear, defend, and appeal a claim in a court of competent jurisdiction; (2) receive notice of, investigate, adjust, compromise, settle, and pay a covered claim." CAL. INS. CODE §1063.2(b). Discussing CAL. INS. CODE §1063.2(b), a California appellate court concluded, "A necessary concomitant of these rights and duties is entitlement to the policy deductible." *In re Imperial Ins. Co.*, 157 Cal. App. 3d 290, 296 (Cal. Ct. App. 1984).[15]

Under the California statute, CIGA is entitled to reimbursement of deductibles under the Policy.

---

[14]     The statutes governing CIGA are available at Appellants' Br., App. Tab 2.

[15]     *In re Imperial Ins. Co.*, 157 Cal. App. 3d 290, 296 (Cal. Ct. App. 1984) ("CIGA is given the 'same rights as the insolvent insurer would have had if not in liquidation, including . . . the right to . . . adjust, compromise, settle, and pay a covered claim. . . ." (Ins. Code §1063.2, subd. (b).) A necessary concomitant of these rights and duties is entitlement to the policy deductible.").

(b)    *OPCIGA's Statutory Rights and Obligations Under Oklahoma Law*[16]

The Oklahoma guaranty statute obligates Appellant OPCIGA to "pay the covered claims . . . ," 36 OKLA. STAT. ANN. §2007(A) (West 2002), but expressly limits that obligation to the limits of the underlying policy. 36 OKLA. STAT. ANN. §2007(A) (flush language) (West 2002) ("In no event shall the Association be obligated to pay a claimant in an amount in excess of the obligation of the insurer under the policy . . . from which the claim arises . . . ."). To the extent of its covered claim obligations, the Oklahoma act expressly grants OPCIGA all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent. 36 OKLA. STAT. ANN. §2007(A) (West 2002) ("The Association shall . . . (2) Be deemed the insurer to the extent of the obligations on covered claims and to that extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."). Because Legion would have had the right to enforce the deductible provisions under the Policy if it had not become insolvent, under the

---

[16]    The statutes governing OPCIGA are available at Appellants' Br., App. Tab 3.

Oklahoma act, so too does OPCIGA have the right to enforce the deductible provisions of the Policy to the extent of its payment of covered claims.[17]

(c) *TPCIGA's Statutory Rights and Obligations Under Texas Law*[18]

Finally, the Texas guaranty act requires Appellant TPCIGA "to discharge the policy obligations of the impaired insurer, . . . to the extent that the policy obligations are covered claims under [the Texas guaranty act]." TEX. INS. CODE. art. 21.28-C §8(b). The Texas act also grants TPCIGA the right to "enforce any duty imposed on the insured party or beneficiary under the terms of any policy of insurance within the scope of [the Texas guaranty act]." *Id.* The right to enforce such duties includes the right to sue the insured for any cause of action the impaired insurer would have had if the impaired insurer had not become insolvent. TEX. INS. CODE. art. 21.28-C §11(a) ("Each insured or claimant seeking the protection of this Act shall cooperate with the association to the same extent as that person would have been required to cooperate with the impaired insurer. The association does not have a cause of action against the

---

[17]    A recent slip opinion from the United States District Court for the Western District of Oklahoma provides instructive guidance on the rights of Plaintiff OPCIGA to recover deductibles. *Okla. ex rel. Doak v. Staffing Concepts Intern., Inc.*, CIV-12-409-C, 2014 WL 296643, *2 (W.D. Okla. Jan. 24, 2014) ("Because the guaranty associations may independently seek to recover deductible reimbursements from SCI, and the Receiver has not been injured with respect to the guaranty association-paid claims, the Court concludes the Receiver 'lacks the requisite interest to have standing to represent the interests of the Guaranty Associations in this matter.'").

[18]    The statutes governing TPCIGA are available at Appellants' Br., App. Tab 1.

insured of the impaired insurer for any sums it has paid out except those causes of action the impaired insurer would have had if the sums had been paid by the impaired insurer and except as provided in Subsection (b) of this section.").

In this case, the duty to reimburse deductibles under the Policy is a duty imposed on the insured Hill Bros. under the terms of the Policy itself. Under the powers granted by the Texas guaranty act, TPCIGA may enforce Hill Bros.' contractual duty to reimburse deductibles. Moreover, because the impaired insurer, Legion, would have had a cause of action against Hill Bros. for Hill Bros.' failure to reimburse deductibles to Legion, so too does TPCIGA have a cause of action against Hill Bros. for Hill Bros.' failure to reimburse deductibles to TPCIGA.

2.     <u>The Pennsylvania Insurance Receivership Laws Acknowledge the Guaranty Associations' Right to Collect Deductibles From Insureds</u>

As discussed briefly above, the Pennsylvania insurance receivership statute expressly acknowledges that the Guaranty Associations may collect deductibles directly from the policyholder. The statute states in pertinent part, "To the extent that guaranty associations pay claims within the deductible amount but are not reimbursed by either the receiver under this section or *by policyholder payments from the guaranty association's own collection efforts*, the guaranty association shall have a

claim in the insolvent insurer's estate for such unreimbursed claim payments." 40 PA. STAT. § 221.23a (i)(2) (emphasis supplied).[19]

> 3.  Construing Similar Statutory Provisions, the Wyoming Supreme Court Held that the Wyoming Insurance Guaranty Association Has the Right to Sue an Insured for Failure to Reimburse Deductibles

Whether a state guaranty association may recover deductibles from an insured is not a matter of first impression.

In *Wyoming Medical Center, Inc. v. Wyoming Insurance Guaranty Association*, 225 P.3d 1061 (Wyo. 2010),[20] the Wyoming Supreme Court addressed in depth the question of whether the Wyoming Insurance Guaranty Association ("WIGA") had the right to sue an insured for breach of contract where the insured failed to reimburse WIGA for deductibles paid in accordance with a policy issued by an insolvent insurer. The court discussed WIGA's powers and duties granted by the Wyoming Insurance Guaranty Association Act (the "Wyoming Act"), citing the following relevant provisions. *Id.* at 1066.

> "[WIGA shall:] Be obligated *to pay covered claims*:"

*Id.* (citing WYO. STAT. ANN. §21-31-106(a)(I)) (emphasis in original).

> "[WIGA shall:] *Be deemed the insurer to the extent of its obligation of the covered claims* and to that extent has all

---

[19]  Appellants' Br., App. Tab 6.

[20]  *See* Appellants' Br., App. Tab 5.

rights, duties and obligations of the insolvent insurer as if the insurer were not insolvent;"

*Id.* (citing WYO. STAT. ANN. §21-31-106(a)(ii)) (emphasis in original).

"Notwithstanding subsection (a) of [§21-31-106], [WIGA]:

. . . .

(iv) Is not obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy or coverage from which the claim arises."

*Id.* (citing WYO. STAT. ANN. §21-31-106(c)(iv)).

"[WIGA] has no cause of action against the insolvent insurer's insured for any sums it has paid out except the causes of action as the insolvent insurer would have had if it had paid those sums."

*Id.* (citing WYO. STAT. ANN. §21-31-110(a)).

Construing the foregoing statutory language from the Wyoming Act, the Court explained the plain language of the statute reflects a legislative intent that WIGA is obligated to pay claims of the insured to the same extent as the insolvent insurer had the insurer not become insolvent. *Id.* at 1067. If the insurer had not become insolvent, the insurer would have been required to pay claims under the subject policy, less the deductibles. *Id.* The insured, for its part, was required to pay the deductibles to the insurer in accordance with the insurance contract. *Id.* at 1067.

> Had [the insured] refused to pay the deductibles, it would have been in breach of the insurance contract and a solvent [insurer] could have sought recovery from [the insured] of the deductible amounts. WIGA's rights and duties are no more and no less than [the insolvent insurer's] would have been. *Construing the statutory language otherwise would leave [the insured] in a better position as a result of WIGA's involvement than it would have been if [the insurer] had not been insolvent, a result we are not convinced the legislature intended.*

*Id.* (emphasis supplied). The Court concluded that WIGA is "entitled to reimbursement of deductibles just as [the insurer] would have been had it remained solvent." *Id.* at 1068.

The statutory language from the Wyoming Act addressed above is virtually identical to the statutes applicable to CIGA, OPCIGA, and TPCIGA. If Hill Bros. refused to pay the deductibles to Legion, it would have been in breach of the insurance contract and Legion could have sought recovery from Hill Bros. for the deductible amounts. Because Appellants have the same rights and duties as Legion with respect to "covered claims" paid under the Policy and within the deductible amounts, Appellants are entitled to reimbursement of the deductibles just as Legion would have been.

4.    <u>The Guaranty Associations' Enabling Statutes Create Contractual Privity Between Hill Bros. and Each of the Guaranty Associations Related to the Covered Claims Paid Under the Policy</u>

The statutory rights, duties, and obligations of the Guaranty Associations to pay covered claims under the Policy in accordance with their respective statutes creates contractual privity between the insured Hill Bros. and each of the Guaranty Associations to the extent of each Guaranty Association's payment of "covered claims."

Construing the Virginia guaranty association statute, the Supreme Court of Virginia explained, "The insolvency of [the insurer] created a legal relationship between [the insured] and the [Virginia Property and Casualty Insurance Guaranty] Association which reflected the terms of the [insurance] policy only to the extent they were not otherwise limited by the [Virginia] Act." *Va. Prop. & Cas. Ins. Guar. Ass'n v. Int'l Ins. Co.*, 238 Va. 702, 385 S.E.2d 614, 616 (Va. 1989). Stated differently, to the extent of payment of covered claims, privity between the guaranty associations and the insured is created at the time the guaranty associations' obligations are triggered through an insurer's insolvency or impairment.[21]

---

[21]    *See Hudson Environmental Servs., Inc. v. New Jersey Property-Liability Ins. Guar. Ass'n*, 372 N.J.Super. 284, 308, 858 A.2d 39, 53 (N.J. Sup. Ct. 2004). In an effort to avoid liability for a bad faith claim, the New Jersey Property and Liability Insurance Guaranty Association argued, in part, that it was not be liable to the insured because the insured and the New Jersey association lacked privity of contract under the subject policy. The New Jersey court rejected this argument: "Indeed, the privity argument seems to fly in the face of the express provision of the Act, under

To the extent of their payment of covered claims under the Policy, the Guaranty Associations are in contractual privity with Hill Bros.

### 5. Hill Bros.' Citation of Reinsurance Cases is Misplaced

In support of its argument that the Guaranty Associations are not proper parties to sue for breach of the workers' compensation policy, Hill Bros. cites the Court to *General Reinsurance Corp. v. Am. Bankers Ins. Co.*, 996 A.2d 26 (Pa. Commw. Ct. 2009). Hill Bros. argues that, because a state guaranty association is not entitled to direct access to reinsurance proceeds in a suit with a reinsurer, then the Guaranty Associations do not have standing to collect deductibles under the Policy. The *Gen Re* court explained at least two critical facts about the reinsurance treaty at issue in the case which show Hill Bros.' citation is misplaced.

First, and most importantly, the *Gen Re* court explained, reinsurance proceeds are general assets of Legion's estate. *Id.* at 36 ("The general rule is that reinsurance recoveries are general assets of the insolvent insurer estate.") (internal citations omitted). In contrast, Pennsylvania insurer receivership law provides that deductible recoveries for covered claims paid by state guaranty associations are assets belonging to the guaranty associations. (citing 40 PA. STAT. § 221.23a (g) ("Any resulting

which PLIGA assumes the insolvent insurer's contractual obligations and has 'all rights, duties and obligations of the insolvent insurer.' At bottom, the problem with the privity analysis . . . is that [it is] unmoored to the language of the [New Jersey guaranty statute]." *Id.* (Internal citations omitted).

recoveries under the deductible reimbursement policy shall be payable to the guaranty associations to the extent of claims paid within the deductible.").[22]

Second, the reinsurance treaty at issue in the *Gen Re* case contained an Insolvency Clause which expressly required the reinsurer to pay all reinsurance proceeds to the insurer or the liquidator in the event of insolvency: "*In the event of the insolvency of [Legion], the reinsurance proceeds will be paid to [Legion] or the liquidator on the basis of the claim allowed in the insolvency proceeding without diminution by reason of the inability of [Legion] to pay all or part of the claim.*" *Id. at 38*. In contrast, Pennsylvania law expressly provides that the Guaranty Associations have the right to collect deductibles due under the Policy on "covered claims." 40 PA. STAT. § 221.23a (i)(2) ("To the extent that guaranty associations pay claims within the deductible amount but are not reimbursed by either the receiver under this section or *by policyholder payments from the guaranty association's own collection efforts*, the guaranty association shall have a claim in the insolvent insurer's estate for such unreimbursed claim payments.") (emphasis supplied).[23]

Whether the Guaranty Associations have standing to pursue collection of reinsurance proceeds directly from a reinsurer under a reinsurance treaty has no

---

[22]     *See* supra I(A).

[23]     *See* supra II(A)(2).

bearing on whether the Guaranty Associations have standing to sue to collect deductibles under a workers' compensation policy. Hill Bros.' citation of the *Gen Re* case is misplaced and provides no support for its argument that the Guaranty Associations do not have standing to collect deductibles.

## B. Conclusion in Response to Hill Bros. Cross-Appeal

The enabling statutes in the Appellants' states of residency grant the Guaranty Associations the same rights, duties, and obligations as the insolvent insurer to the extent of payment of covered claims. These rights include not only the right to reimbursement of deductibles, but also the right to sue Hill Bros. to enforce that right–a right acknowledged under Pennsylvania Law. Appellants are unquestionably proper parties to sue for breach of the Policy. Hill Bros.' cross-appeal lacks merit.

## CONCLUSION AND PRAYER

The Guaranty Associations ask the Court to reverse the trial court's award of summary judgment based on the statute of limitations defense. As a matter of law, the statute of limitations did not begin to run against the Guaranty Associations until they either fully performed the continuing contract or Hill Bros. repudiated its deductible obligation to the Guaranty Associations. The earliest either of these events occurred was February 19, 2007, well within four years prior to the Guaranty Associations filing suit on March 31, 2009.

The Guaranty Associations' enabling statutes grant them the right to collect the deductibles; and Pennsylvania insurer receivership law acknowledges this right. The Guaranty Associations have standing and are proper parties to sue for breach of contract in this case.

For the reasons stated, the Guaranty Associations, Appellants, ask the Court to reverse the District Court's summary judgment and to remand the case for further proceedings.

Respectfully submitted,

STONE LOUGHLIN & SWANSON, LLP
P.O. Box 30111
Austin, Texas 78755
(512) 343-1300
(512) 343-1385  Fax
dprice@slsaustin.com

By: _____
Dan Price (SBN 24041725)
James Loughlin (SBN 00795489)

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

Relying on the word count of the computer program used to prepare Appellants' Reply Brief, the total number of words in this document, excluding sections that are not to be counted under TEX. R. APP. P. 9.4(i)(1), is 5,464.

_____
Dan Price

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2015, a true and correct copy of the foregoing document served as indicated to the parties listed below.

**Via e-Filing/e-Service**
Patrick Pearsall
Adrian Ciechanowicz
DUGGINS WREN MANN & ROMERO, LLP
P.O. Box 1149
Austin, Texas 78767-1149
Telephone: (512) 744-9300

E-mail: pPearsall@dwmrlaw.com
E-mail: aCiechanowicz@dwmrlaw.com

_____
Dan Price

G:\SLS\21744\Appeal\Drafts\2015-09-28 Appellants' Reply Brief.wpd